[No. D055199. Fourth Dist., Div. One. Apr. 6, 2010.]

WILLIAM J. McGUIGAN, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

## COUNSEL

Richard H. Benes and Michael A. Conger for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—Code of Civil Procedure section 1021.5, the private attorney general fees statute, is construed to permit a trial court, in its discretion, to award such fees to a successful party in any appropriate action against "only an opposing party." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176–1181 [39 Cal.Rptr.3d 788, 129 P.3d 1] (*Connerly*) (all statutory references are to the Code of Civil Procedure unless noted; § 1021.5 applies to actions resulting in the enforcement of an important right affecting the public interest).) This statute includes not only three enumerated criteria for the court to consider, but also certain introductory language, as follows: "Upon motion, a court may award attorneys' fees to a successful party *against one or more opposing parties in any action* which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit . . . has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5, italics added.)

The attorney fees matter before us requires interpretation of the introductory terms in section 1021.5, "opposing" and "any action," as well as the enumerated criteria, in the context of postjudgment proceedings, including an appeal, arising from the settlement of one of several pension litigation cases about the funding problems of the retirement system for defendant and respondent City of San Diego (the City; City Employees' Retirement System, or SDCERS).

In the underlying case, appellant William J. McGuigan, a retired City employee acting as a representative plaintiff (Appellant), sued the City, contending that certain City funding agreements seriously underfunded the retirement plans. After a year of litigation, that action was settled in a written agreement that required Appellant to act as a class representative in further proceedings on class action certification. After the settlement was signed, extensive trial court proceedings were conducted, in which certain objectors to the class action proceedings (San Diego Police Officers Association (SDPOA) or the Objectors) raised numerous challenges to the settlement, to attack both the procedures used to certify the class for settlement purposes and the monetary adequacy of the settlement. Ultimately, the trial court found all these objections had been adequately addressed, and the court approved the settlement and issued judgment accordingly in December of 2006.

The settlement agreement included an attorney fees clause specifically referencing an entitlement to an award of section 1021.5 fees to the class counsel, who continues to represent Appellant in this case. After judgment confirming the settlement was entered in December 2006, mediation took place on Appellant's original motion for attorney fees. In February 2007, the City was ordered to pay Appellant a fixed amount of attorney fees ($1.6 million) in connection with the settlement. (This appeal concerns the second such motion.)

Also in February 2007, the Objectors appealed the judgment that had finalized the settlement. Extensive briefing was submitted to this court by all parties, including the City's and the current Appellant's (then a respondent) briefs that defended the settlement. In a prior unpublished opinion by this court, we upheld the judgment approving the settlement.[1]

After our prior opinion was issued in September 2008, Appellant brought the subject motion in the trial court, seeking a further award of attorney fees from the City under section 1021.5, on the ground that his counsel's efforts to defend the class settlement on appeal justified such an award under statutory, contractual and equitable theories. The trial court denied the motion, stating that the statute only allowed fees to be awarded against an opposing party and, under the court's reading of the statute, the City was not an "opposing" party to Appellant at the appellate level, where they were both defending the same settlement against the Objectors.

---

[1] In our unpublished opinion *McGuigan v. City of San Diego* (Sept. 25, 2008, D050291) (our prior opinion), this court affirmed the judgment approving the underlying settlement, which required the City to provide $173 million in funding to the City's retirement system, representing the obligations for certain years. The parties have designated that underlying record as part of the current record. (Cal. Rules of Court, rule 8.124.)

This appeal challenges the trial court's order denying Appellant's motion for such attorney fees incurred during the prior appeal of the settlement judgment. In this unique procedural context, the question is whether the City, as one of two settling parties defending the settlement in an appeal that was pursued by third party objectors, can be assessed attorney fees under section 1021.5 in favor of the other settling party. Such an award would require a characterization of the City as an "opposing party" in the prior appeal, with relation to the other settling party (Appellant), within the meaning of that statute.

We do not revisit the merits of the settlement or the appeal and, for our purposes here, may take it as established that a few of the basic statutory elements for a further award of fees were met (e.g., the action resulted in "enforcement of an important right affecting the public interest"; Appellant was one of the successful parties; significant benefits were conferred on numerous citizens). (§ 1021.5, subd. (a).)[2] However, other essential statutory predicates for an award of statutory fees relating to the prior appeal of the settlement judgment are missing—the City, a settling party and fellow respondent in the third party's appeal challenging the class action settlement, was simply not an "opposing party" to the current Appellant when these fees were incurred; rather, these parties were allied in interest in defending the settlement, for which they had sought and obtained court approval (albeit over the objections of third parties). Further, under section 1021.5, subdivision (b), "the necessity and financial burden of private enforcement" are not demonstrated on this record to have made any such award "appropriate."

For purposes of statutory interpretation and in light of the applicable public policies that are implicated by this record, we conclude the settlement fundamentally changed the original positions of Appellant and the City, from adversity to one another, into allies against a common opponent, and after the time of the settlement and judgment, nothing required Appellant to pursue further arguments (thereby incurring further fees) in the underlying appeal by the Objectors. We need not differentiate between the "action" giving rise to this settlement and the separate phase of appeal by the third parties in the same "action," in order to reach that conclusion. Instead, we agree with the trial court that in view of all of the relevant circumstances, all of the statutory criteria were not met for such an award and the court therefore lacked discretion to make a further award of fees.

---

[2] Section 1021.5 also states, in relevant part: "With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities . . . ." It should be noted here that even though "the interest of justice" term (§ 1021.5, subd. (c)) might be a relevant consideration in other cases, that subdivision does not appear to apply to these facts. Appellant's attorneys (who had a contingent fee agreement) cannot be "paid out of the recovery," since the money the City paid into the pension fund is not accessible to Appellant. (*Ibid.*)

We further decline to accept Appellant's arguments that this record justifies such an award under either contractual or equitable principles, exclusive of a statutory basis. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 34, 45–46 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*).) We affirm the order denying private attorney general fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background of Pension Litigation

The background facts are outlined as briefly as possible, since the purpose of this opinion is only to clarify the respective positions of all the parties as of the time of settlement and during the subsequent appellate challenge to it, in light of the criteria for applying the private attorney general statutory scheme to this record. We adopt the factual and procedural summary from our prior opinion.

In 1996 and 2002, the City implemented certain proposals to provide certain budgeted amounts of employer contributions to City pension plans for the years 1996 through 2006. It later became evident that these City funding agreements seriously underfunded the plans by failing to contribute the actuarially determined amounts of employer contributions that were due the retirement system during that period.

In June 2005, Appellant filed this complaint on a representative basis for retired City employees, alleging specific violations of the City charter, ordinances, and other theories regarding underfunding, including requests for damages. As amended, the complaint sought a judicial declaration that the City's prior annual employer contributions had resulted in underfunding of the pension plans, and a writ of mandate to direct the City to repay the amount of the shortfall to SDCERS, as the trustee of all class members, with interest.[3]

This was not the only action challenging those City funding agreements. The Objectors were separately pursuing their own lawsuits in state and federal courts (civil rights and labor law claims). Also, in July 2004, the City had settled a previous state class action lawsuit, based on similar pension underfunding claims brought by retired City employees, by making other appropriate employer contributions. (*Gleason v. San Diego* (Super. Ct. San Diego County, 2003, No. GIC803779).)

---

[3] The settlement provisions did not expressly release any disputes over retiree health care benefits, and our previous opinion concerned only retirement benefits and pension underfunding.

After extensive discovery was conducted in this action by Appellant and the City, and numerous discovery motions and motions for summary judgment and/or summary adjudication were filed, the case settled, with the assistance of a retired federal judge acting as a mediator. On June 8, 2006, the parties signed a "term sheet," in which City officials agreed to contribute the value of $173 million to the pension funds, relating to the years 1996 to 2006. Plaintiff agreed to act as class representative for purposes of seeking approval and enforcement of a formalized settlement agreement to that effect. (§ 382.) The parties agreed that the complaint would be amended to state a class action for about 18,000 potential class members. They knew it would not be easy and might in fact "create a monster," as Appellant now admits, although he credits (blames) the City for that requirement.

Between August and December 2006, SDPOA and its approximately 1,600 individually named police department employees (the Objectors), among the potential class members, appeared at numerous status hearings in superior court, protesting the settlement. They strenuously argued that a clause in the settlement agreement releasing certain claims was overbroad and might jeopardize their ability to continue to litigate their separate federal actions. For example, they filed a "notice of divestiture" stating that they did not consider this plaintiff to be their representative in the pension litigation matters, and they otherwise raised what Appellant now characterizes as a hurricane of objections.

### B. Written Settlement Agreement; Settlement Attorney Fees Awarded

Meanwhile, negotiations between Appellant and the City continued, and on September 6, 2006, the settlement agreement was formalized and signed by the mayor, releasing the settled claims (i.e., charter and municipal code violations that had created an actuarially unsound fund). On the same date, an amended class action complaint was filed and an ex parte order was issued to certify the proposed class for settlement purposes. It would consist of 18,006 potential class members, who were given notice and an opportunity to object. This class was of the non-opt-out class settlement variety authorized by Federal Rules of Civil Procedure, rule 23(b)(2) (28 U.S.C.). Extensive hearings continued until December 2006, on whether the settlement should be converted into a judgment.

On December 12, 2006, the trial court approved the settlement, stating in part: "Based upon the evidence before the Court, the Court finds that the value of the Pension Underfunding Claims is between $140 million and $158.9 million. The consideration the City has agreed to pay to SDCERS on behalf of the class—$173 million—is more than fair, adequate, and reasonable." Also, the court deemed the settlement, taken as a whole, to be "fair,

adequate and reasonable to the plaintiff, the plaintiff class, and the City." The court noted that the percentage of objectors was low (approximately 10 percent). Judgment was entered accordingly to issue a peremptory writ of mandate requiring the City to comply with the settlement and to provide security. The court retained jurisdiction over the parties to enforce the terms of the judgment and settlement agreement.[4]

The issue of attorney fees originally due under the settlement was sent to arbitration before a federal magistrate in February 2007. The settlement agreement contained the following attorney fees clause: "[Plaintiff's counsel] are entitled to recover attorney fees and costs from the City under . . . Section 1021.5. If the parties cannot agree on the amount of attorney fees and costs, the amount will be decided by a duly-noticed motion filed by Plaintiff's counsel within 120 days of the entry of judgment. All parties reserve their rights with respect to such fee motion, and agree that the Court will decide all issues related to attorneys' fees and costs not otherwise set forth herein. The City reserves the right to contest the amount of fees and costs that should be awarded to [Appellant's] Counsel. . . . The City will and does dispute that [Appellant's] Counsel is entitled to any 'multiplier' of fees. All parties agree that [Appellant's] Counsel is not entitled to request or receive any 'multiplier' for any period after the parties sign this Agreement."[5]

Ultimately, after mediation, the amount of attorney fees was set and the judgment confirming the settlement was amended in 2007, reflecting that the City would pay $1.6 million private attorney general fees to class counsel (for this Appellant).

## C. Prior Appeal

Throughout 2007 through 2008, the Objectors were pursuing their appeal of the judgment confirming the settlement. Both the current Appellant and the City filed extensive briefing and motions on appeal, inter alia, defending the judgment as containing an appropriate and adequate settlement.

Our 62-page prior opinion affirming the judgment that approved the settlement noted, in conclusion, that "the issues presented are complex in nature and have required substantial analysis for resolution at all levels of the

---

[4] At oral argument on the current fees motion, counsel for Appellant pointed out that the City had not yet paid the entire $173 million into the retirement fund, because a portion of the settlement consideration consisted of a number of trust deeds on unencumbered City property.

[5] The City continues to contend Appellant failed to meet the deadline contained in the settlement agreement's attorney fees clause for the filing of such a motion (within 120 days of the entry of judgment). We need not address that argument in light of our disposition of the other legal issues presented, including statutory interpretation.

process." We evaluated the procedure utilized by the trial court in conducting the class fairness hearings in connection with the settlement, and determined no due process violations had occurred. We decided the trial court's certification of the settlement class did not represent an abuse of discretion. Further, we affirmed the judgment on the basis that the trial court's interpretation of the release language in the settlement agreement was correct as a matter of law. The remittitur was issued November 25, 2008.

### D. Fees Motion

In January 2009, after the matter was returned to the trial court, Appellant brought the current motion for an award under section 1021.5, seeking approximately $301,000 in attorney fees incurred on appeal in defense of the judgment. These fees were sought against the City, not the Objectors.[6] The City responded that no further fees were due, arguing that, on appeal, the City was no longer an opposing party with respect to Appellant. Extensive reply papers and lodged documents were presented.

The trial court heard oral argument and on April 24, 2009, issued an order denying the motion for private attorney general fees incurred on appeal. In pertinent part, the court ruled that under section 1021.5, the City was not an opposing party in the appeal by the Objectors, but was aligned with the representative plaintiff (Appellant). At oral argument, the court addressed both the statutory and contractual grounds argued by Appellant, and stated that even though class counsel had done a lot of work to defend the settlement, the law did not allow such an award to Appellant from the City. This appeal followed.

### DISCUSSION

### I

### INTRODUCTION AND STANDARDS OF REVIEW

When a trial court order awarding or denying private attorney general fees is appealed, these standards apply: "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."

---

[6] Although the City contends on appeal that it should be the Objectors who are subject to a fee award in favor of Appellant, if any is made, no such issue is before us and we decline to address it.

(*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].) Although "the decision whether to award attorney fees under section 1021.5 rests initially with the trial court" (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 775 [96 Cal.Rptr.3d 362] (*RiverWatch*)), the court does not have the discretion to award such fees unless the statutory criteria have been met as a matter of law. Where the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the reviewing court applies a de novo standard of review to the legal determinations made by the trial court. (*Connerly, supra,* 37 Cal.4th 1169, 1175.)

 "To obtain attorney fees under section 1021.5, the party seeking fees must show that the litigation: ' " ' "(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter." [Citation.]' [Citation.]" ' [Citations.] Because the statute states the criteria in the conjunctive, each must be satisfied to justify a fee award." (*RiverWatch, supra,* 175 Cal.App.4th at p. 775.)

Before applying those standards, and the statute's introductory language, to this order, we note that Appellant's statutory, contractual, and equitable arguments are closely intertwined. The settlement agreement's attorney fees clause invoked statutory authority: "[Plaintiff's counsel] are entitled to recover attorney fees and costs from the City under . . . Section 1021.5." Although Appellant makes separate statutory and contractual arguments, we think they are inextricably interrelated and are therefore better addressed in connection with how they each affect the different statutory criteria for an award.

 In ruling upon a section 1021.5 fees request, the trial court will exercise " ' "its traditional equitable discretion." ' " (*RiverWatch, supra,* 175 Cal.App.4th at p. 776.) The trial court " ' "must realistically assess the litigation and determine, *from a practical perspective*" . . . whether or not the statutory criteria have been met.' " (*Ibid.,* italics added, citation omitted.) "Courts take a '*broad, pragmatic view of what constitutes a "successful party"* ' in order to effectuate the policy underlying section 1021.5." (*RiverWatch, supra,* at p. 782, italics added, quoting *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140] (*Graham*).)

We reiterate that some of these statutory criteria do not appear to be disputed here. We accept that under the statute, this is an action involving "important right[s] affecting the public interest," and to some extent,

Appellant "successful[ly]" participated in the litigation, settlement, and appeal processes, to create a "significant benefit." (§ 1021.5, subd. (a).) However, since the record also includes undisputed facts showing that the settlement came under significant challenge by the Objectors, both at the trial and appellate levels, we cannot disregard the different stages and phases of the litigation in applying the statutory criteria. Nor can we forget that such a fees award is discretionary and "may" be made, but only if all the relevant criteria are present.

We accordingly next focus our analysis, in light of the applicable rules and policies, upon the remaining interrelated statutory criteria that are hotly disputed between Appellant and City. These are the definitions of an "opposing party," in "any action," and whether the required "necessity" of private enforcement (in view of the financial burdens involved) makes such a fees award "appropriate." (§ 1021.5, subd. (b).)

## II

### SECTION 1021.5: IDENTITY OF "OPPOSING PARTIES"

#### A. Definitions

■ In *Connerly, supra,* 37 Cal.4th 1169, 1176, the Supreme Court read section 1021.5 as providing that "only an opposing party can be liable for attorney fees under section 1021.5." ■ Statutory construction rules led to this conclusion: " ' "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . In order to determine this intent, we begin by examining the language of the statute." ' [Citation.]" (*Connerly, supra,* at p. 1176.)[7]

■ In *Connerly, supra,* 37 Cal.4th 1169, in the absence of a specific statutory definition in section 1021.5, the court assumed that the conventional

---

[7] In *Connerly,* the complicated issue before the court was whether certain real parties in interest (formerly amici curiae) could be held liable for section 1021.5 fees. The real parties in interest were essentially invited by the trial court and the opposing party to take positions to assist the court in resolving the issues raised by the litigation (i.e., whether several state "affirmative action" statutes should be invalidated as unconstitutional, as impermissible governmental preferential treatment by race, sex, and other categories). The state agencies that were the respondents below mainly opted not to defend the statutes. The advocacy groups (real parties in interest and amici curiae) were in favor of affirmative action and defended the state programs and statutes. This gave rise to their rather "unusual" procedural posture in the litigation. The high court held that it would be contrary to public policy to award the plaintiff such attorney fees, as against the advocacy groups as real parties in interest. They had only ideological or policy interests typical of amici curiae, and did not qualify as "opposing parties" with concrete interests in the outcome of the litigation, under section 1021.5. (*Connerly, supra,* 37 Cal.4th 1169, 1172, 1181.) However, the state defendants were properly assessed such fees, as opposing parties.

definition of the term, "opposing parties," would apply: "Generally speaking, the opposing party liable for attorney fees under section 1021.5 has been the defendant person or agency sued, which is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation." (*Connerly, supra,* at pp. 1176–1177.)

Here, as in *Connerly,* "[t]he controversy is over whether a litigant in the [City's] somewhat unusual position can be considered an 'opposing party.' " (*Connerly, supra,* 37 Cal.4th at pp. 1175–1176.) Defining "opposing party" requires consideration of both the origin and the entire procedural history of the subject action between the parties, since we are instructed to utilize a practical approach which "realistically" assesses the litigation, to determine if all the statutory criteria have been met. (*RiverWatch, supra,* 175 Cal.App.4th at p. 776.) We utilize "a *broad, pragmatic view of what constitutes a "successful party"* ' in order to effectuate the policy underlying section 1021.5." (*Id.* at p. 782, italics added.) It is the "impact" of the case as a whole that we must consider. (*Punsly v. Ho* (2003) 105 Cal.App.4th 102, 114 [129 Cal.Rptr.2d 89].) This must include a recognition of the roles of all the different participants or parties, as of all the relevant time periods (before and after the settlement and during the appeal).

First, we look at the role of the successful party in favor of whom fees may be awarded. The terms "prevailing party" and "successful party," as used in section 1021.5, are synonymous. (*Graham, supra,* 34 Cal.4th 553, 570.) However, it is not dispositive for purposes of determining fee entitlements under section 1021.5 whether the party prevailed by settling the case or by obtaining a judgment after trial. (*Graham, supra,* at p. 572.) A negotiated settlement can be deemed to be fair and reasonable in the class action context, even if it does not obtain all of the relief sought. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245–250 [110 Cal.Rptr.2d 145] (*Wershba*).) "In other words, the 'successful' party under section 1021.5 is generally the 'prevailing' party, that is, the party that ' " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " [Citation.]' " (*RiverWatch, supra,* 175 Cal.App.4th 768, 783.) "The party seeking attorney fees need not prevail on all its claims alleged in order to qualify for an award." (*Id.* at pp. 782–783.)

"The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives." (*Graham, supra,* 34 Cal.4th at p. 571.) " ' "A lawsuit's ultimate purpose is to achieve actual relief from an opponent. . . . On this common understanding, if a party reaches the 'sought-after destination,' then the party 'prevails' regardless of the 'route taken.' [Citation.]" ' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 621 [33 Cal.Rptr.3d 817] (*Wal-Mart Real*

*Estate*).) In a determination of whether a party is "successful" for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437].)

■ Next, we look at the role of the opposing party, against whom fees may be awarded. In *Nestande v. Watson* (2003) 111 Cal.App.4th 232 [4 Cal.Rptr.3d 18] (*Nestande*) we noted: "The dictionary definition of 'opposing' is 'opposite in position' or 'active in or offering opposition.' [Citation.] An 'opposite party' means '[a]n adversary in litigation.' [Citation.] Thus, we construe the term 'opposing party' as used in section 1021.5 to mean a party whose position in the litigation was adverse to that of the prevailing party. Simply put, an 'opposing party' within the meaning of section 1021.5 *is a losing party*." (*Nestande, supra*, at pp. 240–241, italics added.)

Here, the Objectors were essentially treated as interveners at the trial and appellate levels. (*Wershba, supra*, 91 Cal.App.4th 224, 253 [in the "context of a class settlement, objecting is the procedural equivalent of intervening"].)[8] They were fully engaged in both the trial court and appellate litigation. As the appellants in the underlying appeal, they filed the opening brief, and the City and also this Appellant (then a respondent) filed respondents' briefs and motions to dismiss, etc. Thus, the City and this Appellant both defended the settlement, for their own reasons, against their common opponents, the Objectors. Of course, that cost money, and this Appellant is now claiming approximately $301,000 as fees for the prior appeal (as well as additional fees in this appeal), all against his former fellow respondent, the City. To better understand this unusual situation, we look at cases recently issued by this court, in which we applied these statutory definitions of an "opposing party."

## B. Case Law Illustrations

■ In each of the myriad variations of the basic litigation alignments that can arise at the trial and appellate levels, courts strive to use a practical and pragmatic approach to evaluate the parties' relationships to one another in interpreting the private attorney general fees statute. These cases take into account the procedural and factual context in which an action arose. For example, in *Nestande, supra*, 111 Cal.App.4th 232, the attorney fees request was made by certain proponents of a ballot initiative (Songstad), who prevailed in their attempt to place an initiative on the ballot, over opposition

---

[8] See *Spark v. MBNA Corp.* (D.Del. 2003) 289 F.Supp.2d 510, 513–514: Objectors to a class action play a different role in class action litigation than class counsel, and objectors may only be awarded such fees as reflect the value the objectors conferred upon the class, in a common fund case.

from certain other private parties (Nestande). Originally, Nestande was successful in suing certain county officials, Registrar of Voters Lever and former County Counsel Watson (the county officials), in their official capacities, to keep the matter off the ballot because the ballot materials were said to be false and not impartial. However, the proponents (named as real parties in interest at the trial court level) then filed a separate petition for writ of mandate in the Court of Appeal to overturn the grant of Nestande's trial court petition. During all of this activity, the county officials were essentially seeking judicial instructions about the proper procedures to follow in processing the initiative. (*Nestande, supra,* 111 Cal.App.4th 232, 236.)

After the proponents prevailed at the appellate level, they sought an award of section 1021.5 fees and costs against both Nestande and "the county." The trial court granted the motion for attorney fees as to Nestande, but denied it as to the county officials. We upheld the trial court order denying the proponents' requests for attorney fees payable by the county officials, on the basis that they were not actually "opposing parties" within the meaning of section 1021.5. The trial court order stated: " 'At no time did Real Party in Interest [proponents] prevail against County, who did not oppose their [appellate] writ petition. The initiative ended up on the ballot exactly as written by the County. Both shared the main objectives of defending the Ballot title and summary and dismissing the trial court's judgment.' " (*Nestande, supra,* 111 Cal.App.4th 232, 238.)

In *Nestande, supra,* 111 Cal.App.4th 232, we agreed with the trial court that the proponents could not recover fees from county officials, who had never taken any legal positions against the proponents. We identified the county officials as litigants who were allied with the prevailing proponents, and who therefore did not qualify as "opposing" parties, even though the county had not litigated the matter "as aggressively as the prevailing party would have liked." (*Id.* at pp. 238–242; see 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 260, p. 844.) They all sought the same outcome—correctly processing the initiative.

■ We also rejected the proponents' claim that the county officials were actually "de facto" opposing parties, within the meaning of section 1021.5. We said, "The incentive the Legislature has chosen to encourage public interest litigation is to permit an award of fees against the losing parties, not to authorize a subsidy out of the public treasury. . . . We cannot rewrite the statute to authorize public funding of attorney fees where neither the government nor any of its representatives is a losing party." (*Nestande, supra,* 111 Cal.App.4th 232, 242.) "The statute does not authorize a successful plaintiff to recover attorney fees out of the public treasury simply because he or she has acted in the capacity of a private attorney general to enforce an important

right affecting the public interest. Rather, a public entity may be held liable for attorney fees only if the agency or its representatives was an 'opposing party' in the litigation." (*Id.* at p. 240.)

In another election case, *Wal-Mart Real Estate, supra*, 132 Cal.App.4th 614, 624, three sets of attorney fees issues were before this court. First, we decided that certain real parties in interest (Drake and Walton), who were successful in opposing a business's (Wal-Mart's) petition for writ of mandate (that sought to prevent or delay a referendum vote on land use decisions by the defendant City of San Marcos; the city), could properly be awarded attorney fees from the business (Wal-Mart) under a private attorney general theory. The reason was that the real parties in interest had fully achieved their objective by thwarting Wal-Mart's attempt to preclude or delay the referendum vote, through the court's denial of Wal-Mart's petition for writ of mandate, after which Wal-Mart did not pursue the matter. (*Id.* at p. 617.)

However, with regard to their next request for private attorney general fees (from the city), those same real parties in interest (Drake and Walton) were held not to be entitled to recover, because, at all times, the city had attempted to maintain a neutral position by seeking a judicial determination of the proper procedure to be followed in counting signatures on the referendum petition. The city neither opposed the attempt by the business to delay the election, nor did it take a position in favor of the real parties in interest who sought to pursue the vote. We said the denial of attorney fees from the city was not an abuse of discretion, because the city was not an "opposing party" within the meaning of section 1021.5.

Further, as to a property owner that was named as a real party in interest because it was involved in the land use matter (Brookfield), it was held not liable for fees due to its minimal level of participation in the litigation, because "[t]he record shows the real dispute was between Drake and Walton and Wal-Mart." (*Wal-Mart Real Estate, supra*, 132 Cal.App.4th 614, 625; see also *Plumbers & Steamfitters, Local 290 v. Duncan* (2007) 157 Cal.App.4th 1083, 1093 [69 Cal.Rptr.3d 184], cited in 7 Witkin, Cal. Procedure (2009 Supp.) Judgment, § 260, pp. 31–32.)

## C. Analysis

Appellant argues the City at all times qualifies as an *opposing party* in this action, because Appellant originally had to sue the City in order to achieve the goal of proper funding of the retirement system. This amounted to the enforcement of an important right affecting the public interest, within the meaning of the statute. (§ 1021.5.) However, Appellant's argument disregards the shifting and changing positions of the parties when the litigation is

viewed as a whole, whether at the trial or appellate level. As a settling party and fellow respondent in the third party Objectors' appeal (challenging the class action settlement), the City was not an "opposing party" to the current Appellant; rather, they were allied in interest in defending the settlement, which was presumably in the best interest of all concerned, leading to their request for court approval of it, even over the objections of those third parties.

In *Connerly, supra,* 37 Cal.4th 1169, 1181, the court held: "Thus, in all of the above cases, those found liable for section 1021.5 fees were either real parties in interest that had a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation, or were codefendants with a direct interest intertwined with that of the principal defendant." By settling the case, the City attempted to end the adversarial nature of its relationship with Appellant, and to acknowledge responsibility for the harmful policies that gave rise to the litigation. (See *Connerly, supra,* at pp. 1176–1177.) That course of action undermines any City liability for fees under this statute.

Here, as in *Nestande,* the public treasury is not necessarily liable for private attorney general fees simply because this was an important case that affected the public interest. "Rather, a public entity may be held liable for attorney fees only if the agency or its representatives was an 'opposing party' in the litigation. [Citation.]" (*Nestande, supra,* 111 Cal.App.4th 232, 240.) Here, as in *Wal-Mart Real Estate,* the record shows "the real dispute" was between the Objectors and the settling parties (together, this Appellant and the City). (*Wal-Mart Real Estate, supra,* 132 Cal.App.4th 614, 625.)

In light of all these factors, including the designations and activities of all the parties and their respective interests throughout the course of events, the City does not qualify under this statutory criterion as an "opposing" party against whom fees may be awarded, vis-à-vis Appellant.

III

*SECTION 1021.5: AWARDS IN "ANY ACTION"*

A. Issues Presented

Having just examined the "parties" aspect of the litigation, we turn to the equally important consideration of the timing and phases of the "action," including the appeal. To support his theory that an attorney fees entitlement, once established at trial, continues into the appellate phase, Appellant relies on the interpretation of *Serrano v. Unruh* (1982) 32 Cal.3d 621, 637 [186

Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*), that is found in *Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543], as follows: " '[I]t is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal.' . . . [Citations.] Indeed, *appellate courts have consistently permitted a successful party to recover attorney fees incurred on appeal when a statute expressly permits such an award in the trial court* . . . ." (Italics added & omitted.)

The nub of Appellant's argument is that the trial court misinterpreted *Serrano IV, supra,* 32 Cal.3d 621, by reasoning that the appeal portion of these underlying proceedings amounted to a separate "action," that had to independently satisfy all the criteria of a statutory entitlement to fees. According to Appellant, it would have been more proper to look at the outcome of the case as a whole, independent of whether the appeal itself satisfied all of the statutory criteria. In other words, Appellant argues the City remained an opposing party in the "action" before, during, and after the settlement was reached, confirmed, and upheld, so the City should remain liable for attorney fees for services performed by class counsel on appeal restrictive beyond those previously compensated by the settlement judgment.

Appellant alternatively argues that the legal issue of *contractual* interpretation presented is whether the contractual language, "when viewed in light of (1) other language in the attorney fee clause and (2) the undisputed circumstances leading to the parties' Settlement Agreement and Release[,] includes a right to attorney fees and costs on appeal."[9]

### B. Analysis

 Under *Serrano IV, supra,* 32 Cal.3d 621, 636–637, it is settled that "[a] statutory fee motion 'does not create a new cause of action . . .' [citation], much less a new 'action.' It is a collateral matter, ancillary to the main cause. [Citations.] It ' "seeks what is due because of the judgment . . . ." ' [Citation.] [¶] . . . [¶] . . . Yet it is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal. [Citation.] This rule governs whether or not the sole issue on appeal has been fee entitlement."

 Once a judgment is taken up on appeal, additional considerations must come into play, with respect to attorney fees entitlements that are based

---

[9] Section 1860 provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

on determinations of prevailing or adverse interests. Such interests can be altered by an appellate reversal or affirmance of the judgment. In *Bennett v. Ukiah Fair Association* (1935) 4 Cal.2d 232 [48 P.2d 36], the Supreme Court defined an "adverse party" in an appeal as " 'one "whose rights may be affected by a reversal of the judgment. . . . Every party whose interest in the subject-matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken, is, we think, an 'adverse party', . . . irrespective of the question whether he appears upon the face of the record in the attitude of plaintiff or defendant or intervener"; . . . The question is whether the judgment gives . . . something which will be taken away by a reversal.' " (*Id.* at p. 234.) If the rights of a party in the case will be "affected by a reversal of the judgment," then that party is considered to be an "adverse party" in the appeal in which it is participating. (*Ibid.*) This may include the original parties to litigation or a real party in interest or intervener, regardless of the designation. (*Ibid.*; *Wal-Mart Real Estate, supra,* 132 Cal.App.4th at p. 622.)[10]

■ In *Serrano III, supra,* 20 Cal.3d 25, 50, the dispositional language included a remand of the attorney fees motions to the trial court, with directions that included: "In each instance, the award of attorneys' fees, if any, shall be made and assessed *only against said defendants and appellants appealing in the respective appeal, or such of them* as the trial court in the exercise of its equitable discretion shall determine." (Italics added.) In the appellate context, that language seems to create a causation requirement, that to be awarded, such fees must have been incurred because of the losing party's creation of the need for them, when the losing party brought the appeal that had to be defended. This rule parallels the rule that such fees are awardable only to the party that created the harmful policies that were ultimately remedied by the suit. (*Connerly, supra,* 37 Cal.4th at pp. 1176–1177.) This body of law allows the courts, in their equitable discretion, to interpret section 1021.5 pragmatically, to determine the appropriateness of a fee award in light of all the relevant circumstances, including the respective activities during the different phases of the litigation. Under subdivision (b) of that section, the courts must make an objective evaluation of the necessity for the incurring of further fees.

■ In *Serrano IV, supra,* 32 Cal.3d 621, 639, the Supreme Court held that "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim."

---

[10] California Rules of Court, rule 8.10 states: "Unless the context or subject matter requires otherwise, the [standard] definitions and use of terms . . . apply to these rules. In addition, the following apply: [¶] (1) 'Appellant' means the appealing party. [¶] (2) 'Respondent' means the adverse party."

Appellant in this case believes that his defense of the settlement on appeal falls within this rule, to include all hours spent to establish and defend both portions of his fee claim, in obtaining the judgment and during appeal. The problem with this analysis, as applied to the record before us, is that this settlement already included a fee award as part of this settlement package, and there are no significant indications in the settlement agreement to suggest that there was a mutual intent of the parties that the fee obligation would be ongoing into the future should an appeal by the Objectors be taken. Certainly, such a prospect was foreseeable, but it does not seem to have been provided for in the fee agreement. Even the multiplier language relied on by Appellant does not support such an interpretation.

Specifically, Appellant argues for a contractual interpretation of the settlement agreement, which, after the citation of section 1021.5, includes language about the future effect of the agreement, as follows: "The City will and does dispute that [Appellant's] Counsel is entitled to any 'multiplier' of fees. All parties agree that [Appellant's] Counsel is not entitled to request or receive any 'multiplier' for any period after the parties sign this Agreement." According to Appellant, the most reasonable interpretation of that multiplier language is that the parties agreed to restrict any postsignature fee disputes to the multiplier issue alone, and not to restrict any other later fees requests.

This interpretation is not well taken. We are well aware that both class counsel and the City Attorney's office performed numerous professional duties in finalizing the settlement agreement, such as giving notice and responding to the Objectors, in the course of obtaining the judgment that confirmed the settlement. Appellant would extend his compensable postsettlement legal representation duties into the appellate process, based upon his fiduciary duties undertaken to represent the class. He relies on *Barboza v. West Coast Digital GSM, Inc.* (2009) 179 Cal.App.4th 540, 547 [102 Cal.Rptr.3d 295] (*Barboza*), to argue that the object of the class representation was not fully accomplished until the appeal resolved all the issues in favor of supporting the settlement. In his petition for rehearing, he further argues that legal issues may arise during the postjudgment enforcement phase of the litigation.

In *Barboza, supra,* 179 Cal.App.4th 540, 545–546, class counsel had obtained a $4 million plus default judgment against a business that had already divested itself of all of its assets and ceased operations. Class counsel brought a motion for attorney fees and essentially sought to withdraw from the case, on the basis that obtaining the judgment completed the legal representation. The trial court denied the request. On appeal, the reviewing court affirmed that order, holding that class counsel's obligations to the class

did not end with the entry of judgment, but continued "until all class issues are resolved, which may include enforcement of the judgment." (*Id.* at p. 543.)

In *Barboza, supra,* 179 Cal.App.4th 540, 546, the court based its holding on the principles guiding class actions, including the representative's and counsel's fiduciary duties to protect absentee class members' interests throughout the litigation, and the administrative role of the trial court in protecting the rights of the absentees. The original justification for the class action was, in part, to provide redress for individual claims that were too small to justify the cost of pursuing individual actions, and the same principle should apply to enforcement of the default judgment. There was an important remaining class issue, "i.e., how the recoverable assets (if any) are to be distributed." (*Id.* at p. 547.)

 We disagree with Appellant that under the circumstances of our case, when the settlement judgment was appealed by third parties, the class representatives and counsel remained obligated by ongoing fiduciary duties to continue to take separate positions, and to make separate filings, from those of the City. Essentially, Appellant is arguing that once he sued the City, and litigation took place on an adversary basis for about a year, the ensuing settlement agreement that incorporated a fees entitlement under section 1021.5 must be interpreted only by considering and acknowledging the originally adverse positions of the parties. An entitlement to attorney fees in connection with the settlement does not necessarily govern a later proceeding at the appellate level. In some cases, as here, the settlement procedure has "trumped" the previous party alignments.

We think that once the settlement occurred, Appellant was no longer in the position of being responsible for defending both the merits and the related fee entitlement in the third party appeal, and he was not justified in incurring future fees in the expectation that they would be recoverable from the City. Rather, the City was entitled to assume that the settlement, including the negotiated attorney fees payment, would put an end to its liability on the substantive theories pursued by Appellant. The City did not breach the settlement agreement, such as by failing to fund the pension plans as agreed, or by otherwise abandoning the settlement at the trial level or on appeal. Notably, our prior opinion did not include any discussion of the underlying fees award to Appellant, and that was not an issue presented on appeal that needed to be defended by Appellant. Rather, our focus in the prior appeal was on the merits of the settlement judgment, which the City was defending.

 Unavoidably, at the time each motion for private attorney general fees is made, the trial court must determine whether the statutory criteria have

been met as of the time of that request for fees. The court cannot disregard some of the criteria, which include those in the introductory paragraph of the statute (requiring that any fees award be made only against the opposing party). Although the second fees motion was brought within the original case number of this action, it qualifies as an ancillary part of the action that must be separately decided as of the time it is brought, in view of all of the relevant circumstances, which are to be evaluated in the discretion of the trial court, but within the statutory controls.

For these reasons, we are unable to conclude as a matter of statutory interpretation that this followup fees motion seeks " ' "what is due because of the judgment . . . ." ' " (*Serrano IV, supra,* 32 Cal.3d 621, 637.) The judgment is the one which settled the case, giving finality to the underlying dispute. When that judgment was affirmed on appeal, both respondents (the City and the current Appellant) were left in the same position as before the appeal, as settling parties. (See *Bennett v. Ukiah Fair Association, supra,* 4 Cal.2d at p. 234.) Under *Serrano III, supra,* 20 Cal.3d 25, 50, an allowable award of attorney fees may be made *"only against said defendants and appellants appealing . . . ."* (Italics added.) Here, that does not include the City (a respondent) after the appeal.

With respect to the contractual arguments, our objective reading of the attorney fees clause in the settlement agreement is that the parties anticipated that only one award of private attorney general fees would be made, as part of wrapping up the settlement and judgment. Even if Appellant thought differently, under the relevant definitions of the "action," he did not maintain a right to recover additional fees in a new collateral proceeding after the appeal was over.

In light of all these factors, viewing the action as a whole, the statutory criterion of necessary adversity in the action was not present at all the relevant times, such as would allow the City to be liable for an award of additional attorney fees to Appellant.

IV

### SECTION 1021.5, SUBDIVISION (b): "NECESSITY" OF PRIVATE ENFORCEMENT

In *Wal-Mart Real Estate, supra,* 132 Cal.App.4th 614, 623, we addressed the issue of when private enforcement is a "necessity" within the meaning of section 1021.5, subdivision (b). " 'This factor " 'looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is necessary.' " ' (*Committee to*

*Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 639 [280 Cal.Rptr. 329].)" An important question in determining whether the services of the private party were necessary is, "Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution to its judgment, which were nonduplicative of those advanced by the governmental entity?" (*Committee to Defend Reproductive Rights, supra,* at pp. 642–643.) In *Wal-Mart Real Estate,* it was significant for fees purposes that the public entity had not filed written opposition to the subject petition, but instead joined the private real parties in interest in filing a "response." Under those circumstances, we concluded the public entity was not an "opposing party" to the private parties within the meaning of section 1021.5. (*Wal-Mart Real Estate, supra,* 132 Cal.App.4th 614, 625.)

Likewise, in *Nestande,* we took a strong position against authorizing a successful private party to recover attorney fees out of the public treasury, merely because that party had acted in the capacity of a private attorney general (to enforce an important right affecting the public interest). "Rather, a public entity may be held liable for attorney fees only if the agency or its representatives was an 'opposing party' in the litigation." (*Nestande, supra,* 111 Cal.App.4th 232, 240.) That was not exactly the case here, at the relevant juncture.

In a multiphase CEQA (California Environmental Quality Act; Pub. Resources Code, § 21000 et seq.) case, *National Parks & Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, 239 [96 Cal.Rptr.2d 576] (*National Parks III*), this court dealt with the problems of evolving and changing results after an appeal, for purposes of evaluating attorney fees entitlements. In the first phase of the litigation, the plaintiff was successful in requiring the public agency to update its environmental documents. When the plaintiff again challenged the updated documents (the return environmental impact report (EIR)), its originally favorable trial court ruling was reversed on appeal, and its ongoing objections were overruled and the writ discharged. (See *National Parks & Conservation Assn. v. County of Riverside* (1999) 71 Cal.App.4th 1341, 1368 [84 Cal.Rptr.2d 563] (*National Parks II*).)

In the third phase of that litigation, the plaintiff sought to preserve a previously made section 1021.5 attorney fee award, which compensated it for the work that led to its unsuccessful second appeal. (*National Parks III, supra,* 81 Cal.App.4th 234, 240.) We rejected the plaintiff's arguments that the previous attorney fees award remained viable, in light of its underlying substantive loss on the merits. Specifically, as relevant here, we noted that despite the sequence of events, all taking place within the same case number, "it is not true that a previously successful party is entitled to fees for

postjudgment litigation *regardless of the outcome of that litigation.*" (*Ibid.*, italics added.) Rather, success in one part of the litigation did not mean that the work in another part of the litigation flowed directly from the first part. We found it significant that the plaintiff had already obtained its recoverable fees for prevailing on the first writ. Once the matter was remanded and further environmental documentation was prepared, the plaintiff again brought a challenge to the updated return EIR. We deemed that to be a substantively discrete action, in which the plaintiff was wholly unsuccessful. "While a party 'need not prevail on every claim presented . . . to be considered a successful party . . .' [citation], Association did not receive even a partial victory in this second litigation. On these facts, Association is not entitled to the requested fees." (*Id.* at pp. 239–240.)

In *National Parks III*, we disagreed with the claims by the plaintiff that it retained a professional obligation to pursue the litigation on the newly updated environmental documents and then to be entitled to compensation by private attorney general fees, regardless of the ultimate success or failure of the positions taken. "There is no statutory authority or case law requiring an opponent in environmental litigation to bring a challenge to a revised EIR filed on a return. While the Association had a right to commence proceedings challenging the adequacy of the Return EIR, it was not required or compelled to do so." (*National Parks III, supra,* 81 Cal.App.4th 234, 242.)

In *State Water Resources Control Bd. Cases* (2008) 161 Cal.App.4th 304 [73 Cal.Rptr.3d 842], the court dealt with the questions of when a public entity's representation of the general public is insufficient, such that a need may arise to induce a private attorney general to duplicate the function, and when such a need should be enforceable through a fees award. The court analyzed the efforts of an appearing private party in an action, to evaluate whether they were necessary and significant to the success that was achieved. (*Id.* at pp. 316–317, citing *Committee to Defend Reproductive Rights v. A Free Pregnancy Center, supra,* 229 Cal.App.3d 633; 7 Witkin, Cal. Procedure (2009 supp.) Judgment, § 286, p. 35.) The question must be whether any unnecessary duplication of effort took place.

Here, Appellant believes he and his counsel had an ongoing fiduciary obligation to the class to defend the settlement judgment on appeal, and that important class issues remained in that respect. (*Barboza, supra,* 179 Cal.App.4th at p. 547.) Appellant argues that he could not trust the City to defend the settlement, because it had settled for more than it arguably owed. In our prior opinion, we discussed the value of the settlement, noting that "Respondents argue that the extensive evidentiary support provided to the trial court, in the form of the eight reports prepared by accounting and legal firms and other analysts, about the pension underfunding problems, supported

a finding that $173 million was an adequate amount in settlement, since the reports variously estimated the debt under Plaintiff's particular theories to be $140 to 159 million."

We cannot reevaluate the amount of the settlement, but instead merely observe that settlements are usually reached when both parties find they serve their respective interests. The settlement included the amendment of the judgment to reflect a substantial award of attorney fees under section 1021.5. About the same time, the Objectors found it necessary to appeal the confirmed settlement. When they did so, both this Appellant and the City filed briefs to defend it on appeal, as respondents. By that time, Appellant had already recovered fees connected with the settlement process. We disagree with Appellant that he had any enforceable remaining obligation to the class to defend the settlement on appeal, or that it was necessary for him to do so in light of the nature of the class issues. The underlying obligation belonged to the City, to adequately fund the retirement plans, and it admitted in the settlement that it was proper to do so, at a certain level, to correct previous deficiencies, and it has not retreated from that position.

As a plaintiff, Appellant did not have to settle the case, and could have pursued the matter through trial to judgment, but chose not to do so. Upon the filing of the Objectors' appeal, it became incumbent upon Appellant to evaluate the potential costs to the client, counsel, and possibly to the City, if additional fees on appeal should be incurred or sought, regarding the settlement. Appellant took the risk of filing appellate briefs separately from the City. However, under our reading of the statute, it was not necessary for him to pursue such private enforcement of the settlement, within the meaning of section 1021.5, subdivision (b). Appellant was essentially acting as a volunteer in a discrete postsettlement proceeding (the appeal). (*National Parks III, supra*, 81 Cal.App.4th 234, 239–240.) Both he and the City sought the same outcome—affirmance of the settlement judgment. (*Nestande, supra*, 111 Cal.App.4th at pp. 238–242.)

Furthermore, construing section 1021.5 to allow imposing liability against the City would be contrary to the judicial policy that favors settlements. This settlement included an attorney fees clause, which should be interpreted in light of that policy, to end the litigation with Appellant as it began and as it progressed. (See *Connerly, supra*, 37 Cal.4th 1169, 1182.) We emphasize that we are bound to decide the issues on appeal with reference to the existing record, and may not offer broad pronouncements on circumstances that are not before us. Although Appellant earnestly requests us to expand upon the scope of his fiduciary duties to the class in the event future problems occur in enforcing the judgment, we must confine our analysis to the facts and issues brought before us. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2

[39 Cal.Rptr. 377, 393 P.2d 689] ["an opinion is not authority for a proposition not therein considered"].)

In *Serrano IV, supra*, 32 Cal.3d 621, 639, the Supreme Court held that "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." Even though the underlying judgment (as amended) included the $1.6 million fee award, we cannot find it to be a just result that the City should pay further fees to Appellant for his assistance in defending the settlement. Under section 1021.5, subdivision (b), "the necessity and financial burden of private enforcement" are not demonstrated on this record to have made any such award "appropriate." In light of all these factors, Appellant has not satisfied the criterion of a "necessity for private enforcement" that would have justified an award of attorney fees in his favor from the City.

V

*INDEPENDENT EQUITABLE THEORY*

Appellant further argues for an "enduring" alternative equitable basis for an award, even if neither statutory nor contractual theories can be applied. Appellant relies on, e.g., *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448 [240 Cal.Rptr. 1], and its citation of *Serrano III, supra*, 20 Cal.3d 25, to the effect that California courts "have the equitable power to award attorney's fees under the private attorney general doctrine, at least when constitutional rights are vindicated, *even absent statutory authorization*." (*Best, supra*, at p. 1462, fn. 12, italics added.)

Absent more recent guidance from the Supreme Court, we decline to explore the extent to which the trial court might retain noncodified, inherent equitable discretion to make a fee award in this kind of case. In *Serrano IV*, the Supreme Court expressed confidence that the existing system in this statutory scheme would be flexible enough to accommodate later-arising concerns, such as the effect of only a partial success by a plaintiff. (*Serrano IV, supra*, 32 Cal.3d at p. 639, fn. 28.)

Moreover, the Supreme Court recently observed in connection with the equitable background of section 1021.5, in *Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954–956 [70 Cal.Rptr.3d 372, 174 P.3d 192]: "Although not explicit in either the statute or case law, it may be supposed that one unspoken justification for departing from the American rule in the case of section 1021.5 private attorney general fees is that it is equitable to impose public interest attorney fees on parties that have done something to adversely

affect the public interest. [¶] . . . [¶] . . . The enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation. It does not appear to encompass the award of attorney fees against an individual who has done nothing to curtail a public right other than raise an issue in the context of private litigation that results in important legal precedent." The Supreme Court has not found it necessary to expand upon the equitable grounds for such a fees award beyond the well-developed statutory criteria, and there is no justification for doing so here.

## DISPOSITION

Affirmed. Costs are awarded to respondent City.

Nares, J., concurred. McConnell, P. J., concurred in the result.

A petition for a rehearing was denied April 27, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 14, 2010, S182754.