[No. D040605. Fourth Dist., Div. One. Aug. 14, 2003.]

BRUCE NESTANDE et al., Plaintiffs and Respondents, v.
LAURENCE M. WATSON, as County Counsel, etc., et al., Defendants and Respondents;
ALLAN SONGSTAD et al., Real Parties in Interest and Appellants.

Counsel

Nossaman, Guthner, Knox & Elliott, Robert D. Thornton, John J. Flynn III, Adam H. Relin, Celena H. Chen; Songstad, Randall & Ulich and William D. Coffee for Real Parties In Interest and Appellants.

Benjamin P. deMayo, County Counsel, Steven C. Miller and Nicole A. Sims, Deputy County Counsel, for Defendants and Respondents.

No appearance for Plaintiffs and Respondents.

Opinion

AARON, J.—

I

INTRODUCTION

Real parties in interest Allan Songstad et al. appeal from the trial court's orders (1) denying their motion for attorney fees as to former Orange County Registrar of Voters, Roslyn Lever, and former Orange County Counsel, Laurence M. Watson; and (2) granting Lever and Watson's motion to strike costs. Appellants contend that the trial court erred in finding they were not "opposing" or "prevailing" parties against "the county" within the meaning of Code of Civil Procedure[1] sections 1021.5 and 1032. We affirm the trial court's orders denying recovery of attorney fees and costs from "the county."[2]

II

FACTUAL AND PROCEDURAL BACKGROUND

Real parties in interest Allan Songstad et al. (Songstad) are proponents of Measure W, a ballot initiative to amend the Orange County General Plan by designating the former El Toro Marine Corps Air Station (El Toro) for a nature preserve, park, and open space, and to repeal an earlier measure which

---

[1] Unless otherwise specified, all statutory references are to the Code of Civil Procedure.

[2] In the proceedings below and in its briefs filed in this court, Songstad refers to Lever and Watson as "the County," and the court below referred to them in this manner in its order denying an award of attorney fees. Orange County, as an entity, was never named as a party in the underlying litigation, and is not a party to this appeal. However, Lever and Watson were named in their official capacities and Songstad seeks an award of attorney fees against the county.

designated El Toro for civil aviation use. On June 14, 2001, Songstad submitted a request to the Orange County Registrar of Voters for a ballot title and summary, pursuant to Elections Code section 9105. On June 29, 2001, Lever issued a ballot title and summary of the initiative, which had been prepared by the county counsel. The proponents of Measure W then began collecting signatures on petitions containing the ballot title and summary in order to qualify the initiative for the March 2002 ballot.

On July 3, 2001, airport supporters Bruce Nestande and Citizens for Jobs and the Economy (together Nestande) challenged the ballot title and summary in a petition for writ of mandate filed in Orange County Superior Court. The respondents named in the petition were Lever, in her capacity as Orange County Registrar of Voters, and Watson, in his capacity as Orange County Counsel. The entity Orange County was not named in the petition. The petition for writ of mandate named the proponents of the initiative, Songstad, as real parties in interest, and alleged that the ballot title and summary violated the Elections Code because they were false and misleading and not impartial.

Songstad filed an answer to the petition. In the answer, Songstad denied that the ballot title and summary were false or misleading, and asserted that petitioners lacked standing to bring the action. Accordingly, Songstad requested "[t]hat judgment be entered in favor of respondents [the county] and real parties in interest."

County counsel filed a separate answer to the petition on behalf of Lever and Watson. In their answer, Lever and Watson denied the material allegations of the petition and asserted three affirmative defenses. They did not raise lack of standing as a defense. In their prayer for relief, Lever and Watson requested that the petition be denied with prejudice. In an accompanying 12-page memorandum of points and authorities, Lever and Watson defended the ballot title and summary as being "a true and impartial summary of the Initiative" and argued against each of Nestande's factual contentions.

On July 31, 2001, the court held a hearing on the petition. During argument, county counsel initially deferred to counsel for Songstad. County counsel subsequently agreed with the arguments made by counsel for Songstad and argued that the ballot title and summary complied with the requirements of the Elections Code. However, the trial court found the ballot title and summary to be misleading, and granted the petition for writ of mandate.

On August 7, 2001, the Orange County Board of Supervisors held a closed session to discuss the pending litigation, but took no "reportable" action. On the same date, Songstad filed a 50-page petition for writ of mandate in the

Court of Appeal, challenging the superior court's order and requesting an immediate stay. In the petition, Songstad again named Lever and Watson as respondents, and Nestande as real parties in interest. Among other arguments, Songstad asserted that Nestande lacked standing to challenge the ballot title and summary. The Supreme Court ordered the matter transferred from Division Three to this court.

On August 14, 2001, the board of supervisors held another closed session to discuss the matter. By a vote of three to two, the supervisors directed county counsel not to appeal the court's order granting the petition for writ of mandate. On the same date, the trial court entered a final judgment granting Nestande's petition and issuing a peremptory writ of mandate directing Watson to amend the ballot title and summary and prohibiting Lever from accepting any petitions containing the original ballot title and summary. Also on the same date, this court ordered Nestande and Lever and Watson to file informal responses to the Songstad petition.

On August 15, 2001, counsel for Songstad wrote a letter notifying this court that September 5, 2001, was the deadline for submission of initiative petitions to the registrar of voters to qualify for the March 2002 ballot. County counsel responded with a letter clarifying that the deadline was September 18, 2001. In his letter, county counsel stated that Lever and Watson took "no position regarding Petitioners' request that this Court stay the Superior Court decision pending a ruling by this Court."

On August 23, 2001, Lever and Watson filed a 15-page response to the Songstad petition. In their response, Lever and Watson concurred with Songstad and asserted that the ballot title and summary complied with the Elections Code and constituted a true and impartial summary of the initiative. Lever and Watson did not argue in their response that Nestande lacked standing to challenge the ballot title and summary.

This court issued an order to show cause why the petition should not be granted, and stayed the trial court's judgment. While the matter was still pending in this court, the registrar of voters certified that the initiative petition had received enough valid signatures to qualify for the March 2002 ballot.

On November 21, 2001, this court granted Songstad's petition in a published opinion and issued a writ of mandate directing the trial court to vacate its order granting Nestande's petition. (*Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202 [113 Cal.Rptr.2d 729].) The court concluded that Elections Code section 9106 permits only the *proponents* of an initiative to seek a writ of mandate requiring that a ballot title and summary be amended. The court held that since Nestande was not a proponent of Measure W, they

lacked standing to challenge the ballot title and summary. (*Songstad v. Superior Court, supra,* 93 Cal.App.4th at pp. 1206–1212.)

Nestande filed a petition for writ of supersedeas in the California Supreme Court to prevent the initiative from being placed on the March 2002 ballot. The Supreme Court denied the petition.

In the election of March 5, 2002, Measure W passed by a vote of 58 percent to 42 percent. (<http://www.oc.ca.gov/election/Live/e2/frame2.htm> [as of Aug. 14, 2003].)

On April 19, 2002, Songstad filed a motion for attorney fees and costs, pursuant to section 1021.5. Songstad sought an award of fees and costs against both Nestande and "the county." Lever and Watson filed a motion to strike costs. After holding a hearing on the motions, the trial court granted the motion for attorney fees as to Nestande, but denied it as to "the county."[3] The court also granted Lever and Watson's motion to strike costs.

In its order denying attorney fees, the trial court found that "the county" and Songstad were not "opposing parties" within the meaning of section 1021.5. The court reasoned: "At no time did Real Party in Interest [Songstad] prevail against County, who did not oppose their writ petition. The initiative ended up on the ballot exactly as written by the County. Both shared the main objectives of defending the Ballot title and summary and dismissing the trial court's judgment."

III

DISCUSSION

A. *Standard of Review*

■ The parties agree that a trial court's order denying attorney fees is subject to review under the abuse of discretion standard. Whether a party has met the statutory requirements for an award of attorney fees is a question best decided by the trial court in the first instance. The trial court's judgment may not be disturbed unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion. (*Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1567 [46 Cal.Rptr.2d 667]; *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, 571 [30 Cal.Rptr.2d 581].) The abuse of discretion standard

---

[3] The trial court's order granting Songstad's motion for attorney fees as to Nestande is not before us in this appeal. We express no opinion regarding the trial court's decision as to Nestande.

also applies to the trial court's determination of costs. (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1298 [87 Cal.Rptr.2d 497].)

Under the abuse of discretion standard, "reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied." (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632].) " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

B.  *The Trial Court Acted Within Its Discretion in Denying an Award of Attorney Fees Against Lever and Watson*

Songstad argues that the trial court erred in denying the motion for attorney fees against Lever and Watson. Songstad maintains that treating "the county" as an opposing party would effectuate the underlying policy of section 1021.5, the codification of California's private attorney general doctrine. Songstad also contends "the county" was a "de facto opposing party" within the meaning of section 1021.5. We conclude as a matter of law that Lever and Watson were not *opposing* parties against Songstad within the meaning of section 1021.5. We therefore find no abuse of discretion and affirm the trial court's order denying an award of attorney fees against Lever and Watson.

Section 1021.5 allows a court to award attorney fees to a "successful" party against "one or more opposing parties" in certain actions resulting in the enforcement of an important right affecting the public interest. The private attorney general doctrine is based on the theory that "privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

In cases in which the prevailing party has not obtained a monetary recovery, an award of attorney fees against an "opposing" party is proper under section 1021.5 if (1) the action has resulted in enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a

large class of persons; and (3) the necessity and financial burden of private enforcement makes the award appropriate. (§ 1021.5; *Woodland Hills Residents Assn., Inc. v. City Council, supra,* 23 Cal.3d at pp. 934–935; *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1666 [39 Cal.Rptr.2d 189].)

"The private attorney general theory is based in part on the supposition that even in cases in which public enforcement is possible, public agencies are often unwilling or incapable because of insufficient staffing to protect important rights." (McDermott & Rothschild, *Foreword: The Private Attorney General Rule and Public Interest Litigation in California* (1978) 66 Cal.L.Rev. 138, 150; accord, *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 545 [63 Cal.Rptr.2d 118] ["Due to the burdens imposed on public agencies, adequate government enforcement of the laws is not always possible, making private action imperative"].) ■ Thus, attorney fees may be recovered by a private party who acts to enforce laws that public agencies are either incapable of enforcing or unwilling to enforce. (*Daniels v. McKinney* (1983) 146 Cal.App.3d 42, 52 [193 Cal.Rptr. 842].) Similarly, private parties who cooperate with governmental officials in successful public interest litigation, and who contribute significantly to the result, may recover attorney fees under section 1021.5. (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 639–646 [280 Cal.Rptr. 329]; *Crawford v. Board of Education* (1988) 200 Cal.App.3d 1397, 1407 [246 Cal.Rptr. 806].)

■ Section 1021.5 by its terms allows attorney fees to be recovered only against "opposing parties." The statute does not authorize a successful plaintiff to recover attorney fees out of the public treasury simply because he or she has acted in the capacity of a private attorney general to enforce an important right affecting the public interest. Rather, a public entity may be held liable for attorney fees only if the agency or its representatives was an "opposing party" in the litigation. (See, e.g., *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213 [226 Cal.Rptr. 265] [affirming award of attorney fees against City of Berkeley after its unsuccessful defense of local ordinance in state and federal courts].)

Section 1021.5 does not specifically define "opposing parties." ■ In construing the statute, however, we must give the words their "usual and ordinary meaning." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040 [130 Cal.Rptr.2d 672, 63 P.3d 228].) The dictionary definition of "opposing" is "opposite in position" or "active in or offering opposition." (Webster's 3d New Internat. Dict. (2002) p. 1583.) An "opposite party" means "[a]n adversary in litigation." (Ballentine's Law Dictionary (3d ed. 1969) p. 893, col. 2.) ■ Thus, we construe the term "opposing party" as used in section 1021.5

to mean a party whose position in the litigation was adverse to that of the prevailing party. Simply put, an "opposing party" within the meaning of section 1021.5 is a losing party.

Our interpretation of section 1021.5 is consistent with federal case law interpreting the federal Civil Rights Attorney's Fees Awards Act. (42 U.S.C. § 1988.) Because California has "relied on federal cases in framing the private attorney general theory, we regard the federal precedent in this area as persuasive." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290 [240 Cal.Rptr. 872, 743 P.2d 932].) Under section 1988 of Title 42 of the United States Code, a party may recover attorney fees against "the losing party ..." (*Kentucky v. Graham* (1985) 473 U.S. 159, 164 [87 L.Ed.2d 114, 105 S.Ct. 3099].) "Liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, [section] 1988 does not authorize a fee award against that defendant." (*Ibid.*; see also *id.* at pp. 165, 168 ["fee liability runs with merits liability"], 171 ["fee and merits liability run together"].) Thus, a governmental entity is not liable for attorney fees unless it has lost on the merits. (*Id.* at p. 168.)

Applying these principles, we affirm the trial court's finding that Lever and Watson were not "opposing" parties to Songstad within the meaning of section 1021.5. Lever and Watson never took any legal position in the litigation that was adverse to Songstad and did not oppose Songstad on the merits of any legal issue. Songstad and Lever and Watson defended the ballot title and summary in the trial court and the appellate court proceedings. Moreover, Lever and Watson were not losing parties. The final outcome of the two writ petitions was that Lever and Watson were not required to change the ballot title or summary prepared for Measure W. This was exactly the outcome Lever and Watson—along with Songstad—sought in the trial court and the Court of Appeal. Thus, Lever and Watson were prevailing parties on the same side of the litigation as Songstad, and they were not opposing parties to Songstad.

Songstad nevertheless argues that an award of attorney fees against "the county" would effectuate the policy of section 1021.5 by encouraging private enforcement of important rights in cases where the government fails to enforce the law vigorously. Songstad points out that "the county" did not appeal the trial court's ruling in favor of Nestande and did not raise the standing issue, which was ultimately the dispositive issue in the Court of Appeal. Because, Songstad maintains, it shouldered the burden of filing the appellate writ, raising and pursuing the standing issue, preserving the ballot title and summary, and ultimately vindicating the voters' right of initiative, "the county" should be required to pay Songstad's attorney fees.

Songstad's argument would be better directed to the Legislature. The incentive the Legislature has chosen to encourage public interest litigation is to permit an award of fees against the losing parties, not to authorize a subsidy out of the public treasury. In accordance with the statutory scheme, the trial court here awarded attorney fees to Songstad against the losing party, Nestande. We cannot rewrite the statute to authorize public funding of attorney fees where neither the government nor any of its representatives is a losing party. "It is the Legislature's business—not ours—to rewrite the statutory criteria." (*Citizens Against Rent Control v. City of Berkeley, supra,* 181 Cal.App.3d at p. 232.)

Songstad repeatedly suggests that "the county's" incentive to defend its own conduct and appeal the trial court's ruling was compromised by the fact that a majority of the Orange County Board of Supervisors opposed Measure W and favored an airport at the El Toro site.[4] Songstad contends that this alleged conflict of interest caused "the county" to put on a lackluster defense of the ballot title and summary, and thus rendered "the county" a "de facto" opposing party in this litigation. ■ However, as we have discussed, the term "opposing parties" in section 1021.5 refers to parties who are adverse to each other in the litigation, not to parties who may be political opponents outside the courtroom. Whatever may have happened in the political dispute over Measure W, Lever and Watson did nothing to oppose Songstad in the litigation. A litigant who is allied with the prevailing party on the merits does not become an opposing party simply by failing to litigate the matter as aggressively as the prevailing party would have liked.

■ We conclude that Lever and Watson were not "opposing" parties to Songstad within the meaning of section 1021.5. Thus, we find no abuse of discretion and affirm the trial court's order denying an award of attorney fees against Lever and Watson.

---

[4] Songstad relies exclusively upon hearsay newspaper articles in arguing that the county's litigation of this case was influenced by politics. Lever and Watson objected to these articles on hearsay and relevance grounds. However, the trial court never ruled on Lever and Watson's evidentiary objections. We need not decide the effect of the trial court's failure to rule on the objections because we would reach the same result with or without the articles. The board of supervisors' political opposition to Measure W does not establish that "the county" was an opponent of Songstad in the litigation. Further, the newspaper articles do not prove that politics influenced Lever and Watson's litigation strategy in this matter. For example, Songstad relies on an article in the Orange County Register on the county's decision not to appeal, in which Supervisor Charles V. Smith is quoted as stating: "I'm very much in favor of not allowing [Measure W] to go on the ballot.... And I'm very much in favor of having an airport." However, the same article also quoted the following explanation by Supervisor Smith of the board's decision not to appeal: "The major reason was, it's already being appealed, so why should the county spend money?"

### C. *The Trial Court Acted Within Its Discretion in Granting Lever and Watson's Motion to Strike Costs*

Songstad argues that the trial court erred in granting Lever and Watson's motion to strike costs. According to Songstad, they were "prevailing parties" against Lever and Watson within the meaning of section 1032, which authorizes a prevailing party to recover the costs of litigation. We conclude that the trial court did not abuse its discretion by granting the motion to strike costs.

Section 1032, subdivision (b) provides that "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." The first sentence of section 1032, subdivision (a)(4) defines a "prevailing party" to include "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." The second sentence of subdivision (a)(4) provides: "When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."

The trial court did not err in finding that Songstad was not a "prevailing party" against Lever and Watson. As we have discussed, Lever and Watson did not oppose Songstad in any of the litigation. Lever and Watson defended the ballot title and summary and achieved the final outcome they and Songstad mutually advocated in court—denial of Nestande's petition. Thus, the trial court properly treated Lever and Watson as prevailing defendants as to the Nestande petition, on the same side of the litigation as Songstad.

Further, Songstad achieved only nonmonetary relief in the writ proceedings in this court. With regard to cases involving nonmonetary relief, the second sentence of section 1032, subdivision (a)(4) provides that the "prevailing party" determination is left to the "discretion" of the trial court and expressly states that the court in its discretion "may allow costs or not." (See 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 90, p. 620 [noting that in such circumstances "the prevailing party is determined by the court and the award of costs is discretionary"].) Songstad offers no persuasive reason for us to find that the trial court abused its discretion in making this determination. We find there was a reasonable basis for the trial court's decision, because Lever and Watson did not oppose Songstad and, in fact, filed a brief supporting Songstad's petition. We therefore affirm the trial court's decision granting Lever and Watson's motion to strike costs.

## IV

## CONCLUSION

The trial court acted within its discretion in finding that Lever and Watson were not "opposing parties" against Songstad within the meaning of section 1021.5. Similarly, the trial court acted within its discretion in finding that Songstad was not a "prevailing party" against Lever and Watson within the meaning of section 1032. Thus, the trial court did not err in denying Songstad's request for attorney fees against Lever and Watson or in granting Lever and Watson's motion to strike costs.

## V

## DISPOSITION

We affirm the trial court's orders denying Songstad's request for attorney fees against Lever and Watson, and granting Lever and Watson's motion to strike costs. Lever and Watson are entitled to costs on appeal.

Benke, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied August 29, 2003.