Filed 6/18/15  North County Watch v. County of San Luis Obispo CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| NORTH COUNTY WATCH et al., | 2d Civil No. B255901 |
| Plaintiffs and Appellants, | (Super. Ct. No. CV098031) |
| v. | (San Luis Obispo County) |
| COUNTY OF SAN LUIS OBISPO et al., | |
| Defendants and Appellants, | |
| SANTA MARGARITA RANCH, LLC, | |
| Real Party in Interest and Respondent. | |

Here we consider the amount of appropriate attorney fees under the private attorney general doctrine codified by Code of Civil Procedure section 1021.5 (section 1021.5).  Appellants North County Watch and Endangered Habitats League filed a petition for a writ of administrative mandate.  The petition alleged that the County of San Luis Obispo and the Board of Supervisors of the County of San Luis Obispo (hereafter collectively referred to as "County") had violated the California Environmental Quality Act (CEQA)[1] and other laws.  The violations allegedly arose from County's approval of a project to be undertaken by Santa Margarita Ranch, LLC (SMR), real party in interest.

---

[1] Public Resources Code, § 21000 et seq.

Appellants achieved a very limited success in the litigation. In view of this limited success, the trial court awarded appellants a small portion of the attorney fees that they had requested. Appellants appeal from the trial court's order, contending that the court "committed an error of law."

The trial court apportioned appellants' attorney fees equally between County and SMR. County cross-appeals from the apportionment order. County contends that, as a matter of law, it is not liable for attorney fees because, unlike SMR, it did not oppose appellants' petition.

We affirm.

*Factual and Procedural Background*

The Santa Margarita Ranch, one of the largest properties in San Luis Obispo County, consists of approximately 14,000 acres. "[T]hroughout its long history, the ranch has been engaged in agricultural use such as grazing and crop production." SMR applied to County for permission to divide a 6,195-acre area of the ranch into 111 residential parcels, five "open space parcels" totaling 3,633 acres, and "one 2,417-acre remainder parcel." In December 2008 County certified an environmental impact report (EIR) and approved the project.

In January 2009 appellants filed a petition for a writ of administrative mandate. They sought to compel County to set aside its certification of the EIR and approval of the project. Appellants requested attorney fees pursuant to section 1021.5.

The petition consists of four causes of action. The first cause of action alleges that County's certification of the EIR violated CEQA. The cause of action lists 10 CEQA violations. The second cause of action asserts that County adopted three findings that are not supported by substantial evidence.[2] The third cause of action states that County's

---

[2] The three findings are: (1) "The determination that certain impacts would be less than significant and/or that adopted mitigation measures would avoid or lessen the Project's significant effects on the environment." (2) "The determination that alternatives to the Project and proposed mitigation measures that would have avoided or lessened the significant impacts of the Projects were infeasible . . . ." (3) "The determination that the

2

approval of the tentative tract map violated the requirements of the Subdivision Map Act. (Gov. Code, § 66410 et seq.) The fourth cause of action alleges that the project conflicts with County's General Plan, Clean Air Plan, and Land Use Ordinance.

After hearings on the merits of the petition, the trial court issued a detailed and thorough 51-page statement of decision. The court found that County had abused its discretion and violated CEQA by limiting the off-site air quality mitigation fee to a maximum of $204 per housing unit. The court also found that County had not complied with the federal protocol for determining the presence of Vernal Pool Fairy Shrimp (VPFS) in the project's seven vernal pools. Vernal "pools are wetlands habitats that contain standing water on an ephemeral basis." A one-year vernal pool study did not reveal the presence of VPFS. The court noted, "Both parties agree that the standard protocol for VPFS studies requires a second year of observation which has not been completed." Because the original one-year study had occurred four years earlier, the court "inferred" that "an entirely new study of two rain years duration will be required to satisfy the federal protocol . . . ."

The court issued a peremptory writ of mandate ordering County not to permit recordation of a tract map or issue any grading or construction permits for the project until it (1) "[c]ause[s] to be completed all vernal pool studies required by the environmental impact report for the Project," (2) "[e]nsure[s] that [SMR] obtains all resources agency authorizations for all biological aspects of the Project," and (3) establishes an appropriate off-site air mitigation fee after conducting "any hearings as may be required by law."

In September 2013 appellants filed a motion for attorney fees pursuant to section 1021.5. They claimed that the lodestar figure was $293,136. The lodestar is calculated "by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work. [Citations.] '[T]he lodestar figure may be increased or decreased depending on a variety of factors . . . .' [Citation.]" (*Christian*

---

overriding economic, legal, social, technological, or other benefits of the Project outweighed its significant impacts on the environment."

3

*Research Inst. v. Alnor* (2008) 165 Cal.App.4th 1315, 1321, italics omitted.) In view of their limited success, appellants reduced the proposed lodestar figure to $160,000. They requested a multiplier of 1.5 and "hard costs, such as copying and travel," of $1,914.28. In addition, they requested $26,261 for preparing the motion for attorney fees and opposing County's motion to tax costs. The total amount of requested attorney fees was $268,810.49

The court observed that appellants "were successful parties only as to two of the issues they raised" - the off-site air quality mitigation fee and the vernal pool study. The court ordered appellants "to provide additional information concerning fees incurred in pursuing those issues where they prevailed."

In December 2013 appellants filed a supplemental memorandum and supporting declaration with exhibits. They contended that, in litigating the two successful claims, counsel had spent "time on matters that were necessary to the litigation regardless of the issues that [appellants] prevailed on." The time spent on these matters was "required simply to prosecute this action." These matters included "Administrative Process" - 26.9 hours; "Administrative Record Preparation" - 78.4 hours; "A[dministrative] R[ecord] Review" - 42.7 hours; "Cost Bill" - 48.7 hours; "Opposition to Demurrer" - 51.6 hours; "General Case Mgmt." - 112.9 hours; "Petition" - 38.1 hours; and "Settlement [negotiations]" - 30.9 hours. The attorney fees for these matters totaled $127,751.

Appellants asserted that, on trial court briefing and oral argument, counsel had spent 424 hours for attorney fees of $115,665. Appellants assumed that 51 percent - $58,989.15 - of these fees were incurred in litigating their two successful claims. Thus, according to appellants, the lodestar figure for these two claims was $186,740.15 ($127,751 + $58,989.15 = $186,740.15). This was $26,000 more than appellants' original lodestar figure of $160,000.

Appellants argued that counsel had spent 108.2 hours ($34,211) on the attorney fees motion. Including this item, the total amount of claimed attorney fees was $220,951.15. Appellants requested that a multiplier of 1.5 be applied to the lodestar

4

figure of $186,740.15. This would increase attorney fees by $93,370 to a grand total of $314,321.15.

In February 2014 appellants' counsel filed a supplemental declaration stating that it had expended an additional 18.2 hours in bringing the fee motion. The fee for these additional hours was $6,497. Thus, the total amount of fees for bringing the fee motion was $40,708 ($34,211 + $6,497 = $40,708).

In its ruling on the motion for attorney fees, the trial court observed that appellants had "made eleven distinct claims," each of which "was based on separate facts and legal theories." The court had "remanded the manner on only two subjects": vernal pools and air quality. Appellants "did not provide information that would allow the Court to reach a simple calculation on the amount of attorney fees incurred in [the] litigation" of these two issues. "Even more frustrating [appellants] . . . claim that most if not all of the attorney fees would have been incurred whether or not [they] were only successful on one of many issues."

The court concluded that appellants were entitled to attorney fees for time reasonably expended on three matters: 65 hours on the vernal pool issues, 35 hours on the air pollution issues, and 20 hours on the motion for attorney fees. Using a rate of $350 per hour, the court arrived at a lodestar figure of $42,000: 120 hours (100 hours for the two successful claims + 20 hours for the attorney fees motion) x $350 = $42,000. The court applied a multiplier of 1.3 to increase attorney fees to $54,600. It awarded appellants costs of $11,773.99. Including attorney fees and costs, the total award was $66,373.99. (The court miscalculated the total award as $66,377.99, four dollars more than the actual amount.) The court ordered County to pay one-half and SMR to pay the other half.

*APPELLANTS' APPEAL*

*Award of Attorney Fees for Two Successful Claims*

Appellants "accept[] the trial court's determination as a factual matter that [they] should have spent 100 hours on developing [their] two successful claims." They also "accept the trial court's use of a blended rate of $350/hour." Appellants continue:

5

"Therefore, this Court need not review the factual determinations made by the trial court in calculating the initial lodestar [of $35,000 for the two successful claims]. Instead, appellants "ask[] for a legal determination that the trial court applied the wrong formula to a case of partial success and should have awarded the undisputed amounts spent on matters that were clearly necessary to the litigation." "Even if [appellants] had only briefed the air quality and vernal pool issues, [they] still would have been required to do all of the other work necessary to file the case (such as exhausting administrative remedies and drafting a petition) and to bring it to a successful conclusion (such as opposing the demurrer, managing the case, and participating in CEQA mandated settlement discussions)." "By denying compensation for work that was indisputably necessary to [appellants'] success in this litigation, the trial court committed an error of law."

In addition to the $35,000 awarded for the 100 hours spent on their successful claims, appellants contend that the trial court should have awarded attorney fees of $16,794 for successfully opposing SMR's demurrer, $11,577 for settlement discussions, $10,004 for "time participating in the administrative process," $11,946 for drafting the petition, $16,154 for preparing the administrative record, $10,675 for reviewing that record, $40,090 for case management, and $10,511 for "successfully opposing the County's motion to strike costs." The time spent on these tasks was "necessary to actually prosecute the litigation and prevail on the two successful claims." The fees should "be enhanced according to the 1.3 multiplier awarded by the trial court."

*Determination of Section 1021.5*

*Attorney Fees in Cases of Limited Success*

"Section 1021.5 codifies the private attorney general doctrine adopted by the California Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25 . . . . [Citation.] The fundamental objective of the private attorney general doctrine is ' " 'to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of

6

citizens.' " [Citation.]' " (*RiverWatch v. County of San Diego Department of Environmental Health* (2009) 175 Cal.App.4th 768, 775.)

"California courts applying section 1021.5 in cases of limited success have adopted the approach set forth in *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 [103 S.Ct. 1933, 76 L.Ed.2d 40] (*Hensley*). [Citation.]" (*Environmental Protection Information Center v. California Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238; see also *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989-990.) Pursuant to *Hensley*, no fee may be awarded on an unrelated, unsuccessful claim. (*Hensley*, *supra*, 461 U.S. at p. 435.) If "a plaintiff has achieved only partial or limited success, . . . even where the plaintiff's claims were interrelated . . . the most critical factor is the degree of success obtained." (*Id.*, at p. 436.) "[W]here the plaintiff achieved only limited success, the [trial] court should award only that amount of fees that is reasonable in relation to the results obtained." (*Id.*, at p. 440.) "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." (*Id.*, at p. 440.) "There is no precise rule or formula for making these determinations. The [trial] court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." (*Id.*, at pp. 436-437.)

The Supreme Court continued: "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should . . . maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." (*Hensley*, *supra*, 461 U.S. at p. 437.)

The Supreme Court noted that the trial court's "discretion in determining the amount of a fee award . . . is appropriate in view of [its] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the [trial] court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the

7

plaintiff, the [trial] court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." (*Hensley*, *supra*, 461 U.S. at p. 437.)

## *Standard of Review*

"Generally, a trial court's ruling on a request for attorney fees under section 1021.5 is reviewed for abuse of discretion. [Citation.] De novo review is appropriate when the trial court's determination of whether the statutory criteria were met presents an issue of statutory construction or a question of law. [Citation.]" (*Children & Families Commission of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 57; see also *Connerly v. State Personnel Board* (2006) 37 Cal.4th 1169, 1175 (*Connerly*).)

It is undisputed that appellants met the statutory criteria for an award of attorney fees. Accordingly, we review for abuse of discretion the trial court's ruling on the amount of fees awarded. " 'The trial court's determination may not be disturbed on appeal absent a showing that there is no reasonable basis in the record for the award.' [Citation.]" (*Children & Families Com. of Fresno County v. Brown*, *supra*, 228 Cal.App.4th at p. 58; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 ["Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason"].)

## *No Abuse of Discretion*

The trial court did not abuse its discretion in awarding attorney fees of $35,000 for the two successful claims. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." (*Hensley*, *supra*, 461 U.S. at p. 440.) Appellants' success was very limited. They did not achieve their primary objective, which was to set aside County's certification of the EIR and approval of the project. Appellants alleged numerous CEQA violations as well as violations of the Subdivision Map Act and the County's General Plan, Clean Air Plan, and Land Use Ordinance. They succeeded only in setting aside an off-site air quality mitigation fee and requiring the completion of a vernal pool study.

8

The trial court cited *Hensley* and said that it was "[a]pplying the *Hensley* criteria to this case." The court satisfied the *Hensely* requirement that it "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." (*Hensley*, *supra*, 461 U.S. at p. 437.) The court noted that appellants' "level of success when compared to the cost and scale of the overall relief sought by [appellants] was limited." The court observed that appellants had prevailed on only two of "eleven distinct claims" that were "based on separate facts and legal theories." Appellants acknowledge that they "never sought to be compensated for [their] unsuccessful claims."

Appellants "accept the trial court's determination that [they] should have spent only 100 hours developing the two issues on which [they] prevailed." In view of this concession and appellants' very limited success, an attorney's fee of $35,000 (100 hours x $350 per hour), with a 1.3 multiplier, does not "exceed[] the bounds of reason." (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 566.)

Our conclusion that the trial court did not abuse its discretion is supported by *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179. There, the plaintiff requested attorney fees of $231,098 pursuant to section 1021.5. The trial court reduced the fees to $19,176. "It found that the reduction was justified because [the plaintiff] succeeded on only one of its six CEQA arguments and on none of its four CUP [conditional use permit] arguments." (*Id*., at p. 1183.) The appellate court concluded that the plaintiff had "not met its burden of demonstrating an abuse of discretion ." (*Id*., at p. 1182.)

During oral argument before this court, appellant cited *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603 (*Biological Diversity*), as an example of a case where an appellate court had reversed, for abuse of discretion, a trial court's reduction of attorney fees sought pursuant to section 1021.5. *Biological Diversity* is clearly distinguishable. There, the trial court used faulty reasoning to reduce by 56 percent the number of hours claimed for appellate work. The trial court reasoned " 'that the majority of the hard ground work was done in the trial

9

court and that it would be unnecessary to expend significant hours re-plowing the same field for purposes of appeal.' " (*Id*., at p. 620, fn. omitted.)  The appellate court held that the trial court had abused its discretion because its ruling "indicates on its face that it was based on the court's erroneous belief appellate work is principally a rehash of trial work." (*Id*., at p. 622.)  Here, in contrast, the trial court's ruling reducing attorney fees was not on its face based on faulty reasoning.

*Award of Attorney Fees for Bringing the Fee Motion*

Appellants argue that the trial court abused its discretion in awarding attorney fees of only $7,000 for bringing the fee motion.  The award was based on the court's finding "that a reasonable time for the motion would be 20 hours" (20 hours x $350 per hour = $7,000).  Appellants did not request that a multiplier be applied to the fee amount.  But the court applied a 1.3 multiplier to the $7,000 figure.  (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 581-582 [attorney fees for fee litigation under section 1021.5 may be enhanced by a multiplier].)  Thus, the total award was $9,100.  Appellants requested an award of $40,708 for 126.4 hours expended in bringing the motion.

We review the $9,100 award for abuse of discretion.  (*PLCM Grp. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  The award reflects appellants' limited success in their fee motion.  Appellants sought fees of $186,740.15 for litigating the two successful claims. They were awarded $35,000, less than 20 percent of what they had sought.  As we have previously noted, appellants "accept" the trial court's finding that they "should only have spent 100 hours on [their] two successful issues."  The trial court did not exceed the bounds of reason in determining that appellants' counsel should have reasonably spent no more than 20 hours in seeking attorney fees for the 100 hours reasonably expended in litigating the merits of the two successful issues.

*COUNTY'S CROSS-APPEAL*

County contends that the trial court erroneously required it to pay one-half of the attorney fees awarded to appellants.  County asserts that it "never opposed the issuance of the writ."  It was therefore not an "opposing party" within the meaning of section 1021.5, which provides for the award of attorney fees "to a successful party against one or more

opposing parties." (*Ibid.*) "[O]nly an opposing party can be liable for attorney fees under section 1021.5. " (*Connerly*, *supra*, 37 Cal.4th at p. 1176.)

County filed a notice informing the trial court and parties that it "will not answer or otherwise file a responsive pleading in response to the writ petition." In the notice County stated that it "has no interest in exposing itself to an award of private attorney general fees . . . were such fees to be awarded in this petition." The trial court's judgment notes that, in opposition to the petition, "[n]o appearance, briefs, or arguments were presented by counsel for [County]."

### Waiver Issue

SMR argues that County has "waived any claim that the allocation [of attorney fees] was improper" because it "accepted the allocation in the proceedings below." SMR's waiver argument is based on the following statement of County's counsel: "[T]he County recognizes that the Court has the ability to apportion the fees, and the County also recognizes that if there wasn't an apportionment, that it would be joint and several, so we appreciate the fact that the fee has been apportioned, and we welcome the apportionment. *. . . [W]e don't appreciate having half of it. We think it should have gone the other way*, [i.e., SMR should have been responsible for payment of the entire fee] . . . but we welcome the fact that it [the fee award] has been apportioned [instead of made joint and several]." (Italics added.)

The above statement does not constitute a waiver. Counsel made clear that County was adhering to its position that it was not liable for any portion of appellants' attorney fees.

### Trial Court's Ruling

In determining that County was an opposing party and therefore liable for appellants' attorney fees, the trial court relied on *Connerly*, *supra*, 37 Cal.4th at pp. 1176-1177. It reasoned: "[A] public agency [that] initiated or maintained an action or policy" that is being challenged cannot "avoid a fee award by refusing to oppose the litigation." "County acted in its quasi-judicial capacity in approving the project and it is that approval

11

that is subject to challenge. The County is responsible for initiating and maintaining actions or policies that are subject to the challenge by [appellants]."

*Standard of Review*

"Here, the question is whether [County] can be assessed attorney fees under section 1021.5 as an 'opposing part[y]' within the meaning of that statute. Under some circumstances, this may be a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review. [Citation.] . . . [H]owever, the material facts in the present case are largely undisputed. The controversy is over whether a litigant in [County's] . . . position can be considered an 'opposing party.' This is a question of law and is reviewed by us de novo. [Citation.]" (*Connerly*, *supra*, 37 Cal.4th at pp. 1175-1176.)

*Discussion*

For guidance, we look to our California Supreme Court's opinion in *Connerly*. There, the plaintiff successfully pursued litigation against six state agencies. Plaintiff sought to invalidate several affirmative action statutes. "The state agencies . . . for the most part opted not to defend the statutes . . . . It fell to various amici curiae advocacy groups that were in favor of affirmative action to defend the state programs and statutes on the merits." (*Connerly*, *supra*, 37 Cal.4th at p. 1172.)

Pursuant to section 1021.5, the trial court granted the plaintiff's motion for an award of attorney fees. It ordered the state agencies to pay five-sixths and the advocacy groups to pay one-sixth of the award. The advocacy groups contended that they "were not liable for attorney fees in litigation to declare unconstitutional statutes they were not responsible for enacting or enforcing." (*Connerly*, *supra*, 37 Cal.4th at p. 1172.)

Our Supreme Court concluded that the advocacy groups were not opposing parties within the meaning of section 1021.5. The court reasoned: "Whether [they were] . . . opposing part[ies] within the meaning of section 1021.5 is ultimately a question of statutory construction. . . . Because the term 'opposing parties' is not defined, it can be assumed that the Legislature was referring to the conventional definition of that term. . . . [¶] *Generally speaking, the opposing party liable for attorney fees under section 1021.5*

12

*has been the defendant person or agency sued, which is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation*. [Citations.] By this standard [hereafter the *Connerly* standard], the [advocacy groups] clearly [were] not . . . 'opposing part[ies]' because [they were] responsible neither for enacting nor enforcing the statutes that were judged to be unconstitutional in the underlying litigation." (*Connerly*, *supra*, 37 Cal.4th at pp. 1176-1177, italics added.)[3]

Pursuant to the *Connerly* standard, County was an opposing party because it was "responsible for initiating and maintaining actions or policies [i.e., the approval of the project] that are deemed harmful to public interest and that gave rise to the litigation." (*Connerly*, *supra*, 37 Cal.4th at p. 1177.) County's approval triggered appellants' lawsuit. By refusing to defend against the lawsuit, County could not render itself a nonopposing party immune from liability for attorney fees under section 1021.5.

County argues that an opposing party is a losing party, and "[a] party cannot become a losing party unless it places itself in a position in the litigation that is adverse to that of the prevailing party. This is the lesson of *Nestande v. Watson* (2003) 111 Cal.App.4th 232." We disagree. Nestande filed a petition for a writ of mandate challenging the ballot title and summary of an initiative to amend the Orange County General Plan. The title and summary had been prepared by the county counsel. Songstad, a proponent of the initiative, and the county filed answers to Nestande's petition. In their answers they defended the ballot title and summary.

The trial court granted Nestande's petition. In response, Songstad filed a petition for a writ of mandate in the Court of Appeal. Songstad's petition challenged the trial

---

[3] The Supreme Court noted that the advocacy groups had "only an ideological or policy interest [in the litigation] typical of an amicus curiae." (*Connerly*, *supra*, 37 Cal.4th at p. 1181.) The court concluded that "construing section 1021.5 to allow liability against the . . . [advocacy groups] would be contrary to the judicial policy . . . of welcoming amici curiae in order to 'facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions.' [Citation.]" (*Id*., at p. 1182.)

court's order granting Nestande's petition. County filed a response to Songstad's petition in which it claimed that the ballot title and summary "constituted a true and impartial summary of the initiative." (*Nestande v. Watson, supra*, 111 Cal.App.4th at p. 237.) Songstad prevailed on his petition. As a result, the ballot title and summary appeared on the ballot "exactly as written by the County." (*Id.*, at p. 238.) The voters approved the initiative.

Songstad filed a motion for attorney fees pursuant to section 1021.5. He sought recovery from both Nestande and the county as "opposing parties." The appellate court concluded that the county was not an opposing party to Songstad and, therefore, not liable for his attorney fees. The court noted that Songstad and the county had "defended the ballot title and summary in the trial court and the appellate court proceedings." (*Nestande v. Watson*, *supra*, 111 Cal.App.4th at p. 241.) Moreover, the county "never took any legal position in the litigation that was adverse to Songstad and did not oppose Songstad on the merits of any legal issue." (*Ibid.*) In addition, the county was not a losing party. "The final outcome of the two writ petitions was that [the county was] not required to change the ballot title or summary . . . . This was exactly the outcome [the county] - along with Songstad - sought in the trial court and the Court of Appeal. Thus, [the county was a] prevailing part[y] on the same side of the litigation as Songstad, and [it was] not [an] opposing part[y] to Songstad." (*Ibid.*)

In contrast to the county in *Nestande*, County here was not a "prevailing part[y] on the same side of the litigation as" appellants. (*Nestande v. Watson*, *supra*, 111 Cal.App.4th at p. 241.) The result of the litigation was not "exactly the outcome [County] - along with [appellants] - sought in the trial court." (*Ibid.*) Thus, *Nestande* is of no assistance to County. Furthermore, County was clearly a losing party because the trial court expressly found that it had "abused its discretion" and violated "basic CEQA principles" in setting the off-site air quality mitigation fee. In its reply brief County concedes, "There is no dispute that the Board of Supervisors erred when it . . . imposed an off-site air quality mitigation fee that was not supported by substantial evidence in the record."

14

A recently published opinion, *Animal Protection and Rescue League v. City of San Diego* (May 27, 2015) D065178, 2015 DJDAR 5754 (*Animal Protection*), supports our rejection of County's argument that it was not an "opposing party" within the meaning of section 1021.5.  In *Animal Protection* the City of San Diego confessed error in its answer to a petition for a writ of mandate.  Pursuant to section 1021.5, the trial court awarded attorney fees to the petitioners.  The City contended that it was not liable for attorney fees because it had never taken a position adverse to the petition and, therefore, was not an opposing party.  Relying on *Connerly v. State Personnel Board*, *supra*, 37 Cal.4th 1169, the *Animal Protection* court concluded that the City was an opposing party.  The court distinguished *Nestande v. Watson*, *supra*, 111 Cal.App.4th 232.

*Disposition*

The order awarding attorney fees is affirmed.  SMR shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.


15

Jac A. Crawford, Judge

Superior Court, County of San Luis Obispo

_____


Shute, Mihaly & Weinberger LLP, Ellison Folk, Sara A. Clark; and Michael Fitts for Plaintiffs and Appellants.

Rita L. Neal, County Counsel, County of San Luis Obispo, and Timothy McNulty, Assistant County Counsel, for Defendant and Appellant County.

Hollister & Brace, Richard C. Monk, and Marcus S. Bird for Real Party in Interest and Respondent.