Filed 12/26/23  City of Fresno v. Fresno Building Healthy Communities CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF FRESNO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRESNO BUILDING HEALTHY COMMUNITIES,<br><br>    Defendant and Appellant,<br><br>HOWARD JARVIS TAXPAYER ASSOCIATION,<br><br>    Intervener and Respondent. | F084662<br><br>(Super. Ct. No. 19CECG00422)<br><br><br>**OPINION** |
| FRESNO BUILDING HEALTHY COMMUNITIES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF FRESNO,<br><br>    Defendant and Respondent,<br><br>HOWARD JARVIS TAXPAYER ASSOCIATION,<br><br>    Intervener and Respondent. | F084666<br><br>(Super. Ct. No. 19CECG00432) |

APPEAL from an order of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

Olson Remcho, Thomas A. Willis, Deborah B. Caplan, Benjamin N. Gervercer, and Inez Kominski for Defendant and Appellant in F084662 and Plaintiff and Appellant in F084666.

Andrew Janz, City Attorney, Travis R. Stokes, Assistant City Attorney; Aleshire & Wynder, Anthony R. Taylor, Michael C. Huston, and Shukan A. Patel, for Plaintiff and Respondent in F084662 and Defendant and Respondent in F084666.

No appearance for Intervener and Respondent.

-ooOoo-

In the November 2018 general election, 52.17 percent of Fresno voters voted for Measure P, a voter initiative measure entitled the "Fresno Clean and Safe Neighborhoods Parks Tax Ordinance."  The city council did not certify Measure P because it did not achieve a two-thirds majority vote of the electorate.  This was based on the City's interpretation of the taxing restrictions in the California Constitution imposed by Propositions 13 and 218.

Fresno Building Healthy Communities ("FBHC"), a citizen group, sent a letter to the City's mayor requesting that the City change course and declare Measure P had passed.  The City responded by filing a complaint against FBHC for declaratory relief. That same day, FBHC filed a verified petition for writ of mandate and complaint for declaratory relief.  Howard Jarvis Taxpayers Association (HJTA) intervened in both cases.

HJTA filed a motion for judgment on the pleadings in the two cases, requesting a judgment in its favor declaring that Measure P had not passed.  FBHC opposed the motion, and the City filed a statement of neutrality.  The trial court granted HJTA's motion and entered judgment in both cases declaring that Measure P had not passed. FBHC appealed.

2.

This court reversed the lower court and held that special taxes proposed by citizen initiative need only be approved by a simple majority of voters. (*City of Fresno v. Fresno Building Healthy Communities* (2020) 59 Cal.App.5th 220, 228–229 (*City of Fresno*).) We directed the lower court to enter new judgments in FBHC's favor in the two cases declaring that Measure P had passed. (*Id.* at p. 240.)

On remand, FBHC sought attorney fees under Code of Civil Procedure section 1021.5.[1] The City opposed the motion, and the court denied the motion on multiple grounds. FBHC appeals from the order denying its motion. We reverse the order denying the motion and remand for further proceedings.

## FACTS

In 2018, Fresno citizens circulated an initiative petition to place Measure P on a future City election ballot. (*City of Fresno, supra,* 59 Cal.App.5th at pp. 228–229.) The initiative proposed "a 3/8 percent transaction and use tax (i.e., sales tax) to improve park safety and accessibility for persons with disabilities, update and maintain playgrounds and restrooms, provide youth and veteran job training, improve after-school, arts, and recreation programs, beautify roadways, and create parks and trails in neighborhoods without current access." (*Id.* at pp. 228–229.) The tax would be for 30 years. The initiative garnered enough signatures, and the City placed it on the November 2018 general election ballot. (*Id.* at p. 229.)

Measure P received 52.17 percent of the vote. (*City of Fresno, supra,* 59 Cal.App.5th at p. 229.) In December 2018, the Fresno City Council determined Measure P failed because it had not been approved by two-thirds of the electorate. (*Ibid.*) The council interpreted certain provisions of the California Constitution, imposed by Propositions 13 and 218, as requiring all special taxes be approved by a two-thirds vote of the electorate.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

3.

In January 2019, FBHC, through its hired counsel, sent a letter to the City's mayor. FBHC advised that the City was misinterpreting the constitutional provisions governing tax measures and that Measure P had been validly adopted. FBHC thus urged the City to begin the process for implementing it. The letter conveyed FBHC was prepared to litigate the issue if the City did not change its position.

In response, the City filed a complaint for declaratory relief against FBHC on February 1, 2019. In paragraph 18 of the complaint, it was alleged by the City that the "Council declared Measure P failed because of its failure to be approved by a two-thirds vote of the electorate. The declaration was consistent with the requirement of Section 4 of Article XIII of the California Constitution that special taxes must be approved by a two-thirds vote of the electorate."

The complaint also alleged that an "actual, present controversy" existed between the City and FBHC as to whether a citizen-initiated tax measure required approval by a simple majority or two-thirds of voters. The prayer for relief stated that the City was bringing "this action to request the Court declare the appropriate voter threshold for passage of a special tax brought by voter initiative." FBHC filed an answer in which it requested that the court "issue an order declaring that Measure P only required approval by a simple majority and, having received approval by a majority of voters, must be declared enacted …."

On the same day, FBHC filed its own petition for writ of mandate and declaratory relief against the City.[2] FBHC requested the trial court declare Measure P had passed with enough votes. The City answered FBHC's complaint. The City's answer requested that: "the Court declare the appropriate voter threshold for passage of a special tax brought by voter initiative[.]"

_____

[2] The City's action and FBHC's action were filed just over an hour apart.

On February 26, 2019, HJTA was granted leave to intervene on behalf of the City and against FBHC in both cases. FBHC agreed to consent to HJTA's intervention on the condition that HJTA would not seek attorney fees from FBHC. HJTA agreed, provided FBHC also agreed not to seek fees from HJTA. That agreement was reached.

HJTA filed a motion for judgment on the pleadings in the trial court, arguing that the California Constitution required two-thirds voter approval for local tax measures initiated by citizens, the same as it requires for those initiated by local governments. (*City of Fresno, supra,* 59 Cal.App.5th at p. 230.) FBHC opposed the motion. (*Ibid.*) The City submitted a statement of neutrality. The City did not file any motions, oppose any motions, or conduct any discovery.

The trial court granted HJTA's motion without leave to amend in September 2019. (*City of Fresno, supra,* 59 Cal.App.5th at p. 230.) The trial court then entered judgment in HJTA's favor, and FBHC appealed from both judgments. (*Id.* at p. 226.) The two cases were consolidated on appeal, and HJTA filed a respondent's brief as intervenor and respondent. The City took no position on appeal. This court held that special taxes proposed by voter initiative need only be approved by a majority of voters, and therefore Measure P had been duly enacted. (*City of Fresno, supra,* 59 Cal.App.5th at p. 235.) HJTA filed a petition for review in the Supreme Court of California. FBHC opposed the petition, and it was denied by the Supreme Court. (*City of Fresno, supra,* 59 Cal.App.5th 520, review denied Mar. 30, 2021, S266846.)

The trial court on remand entered new judgments for FBHC, declaring Measure P had passed and directing the City to take steps necessary to implement it. FBHC then moved for attorney fees in each case under section 1021.5,[3] which the City opposed. FBHC sought one fee award for work on both cases in the total amount of $362,835.75.

[3] Section 1021.5 provides in relevant part:

"Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an

5.

After a hearing on the motion, the trial court issued one order, entered in both cases, denying FBHC's motion. The court denied the motion on several independent grounds: the City was not an "opposing party" to FBHC; FBHC's participation in this litigation was not "necessary"; the City's "actions were not detrimental to the public interest such that imposing a fee award against it would be appropriate"; and the "interest of justice" did not warrant a fee award against the City.

FBHC appealed from this order in both cases, and we granted FBHC's motion to consolidate the appeals.

## DISCUSSION

### A.    Overview of section 1021.5

"Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees. [Citation.] '[T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' " (*Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 449.) Fee awards "are not intended to punish those who violate the law but rather to ensure that those who have

_____

important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

6.

acted to protect the public interest will not be forced to shoulder the cost of the litigation." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1180 (*Connerly*).)

Again, section 1021.5 provides in relevant part:

> "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

" 'Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. [Citation.] Unless special circumstances would render an award of 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria are met.' " (*Burgess v. Coronado Unified School District* (2020) 59 Cal.App.5th 1, 7, original italics.)

### B.     Standard of review

The trial court's decision of whether section 1021.5's requirements have been met is normally reviewed for abuse of discretion. (*People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 456 (*Investco*).) In determining whether a party has met the requirements for a fee award, the trial court " ' "must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met. [Citation.] Its decision will be reversed only if there has been a prejudicial abuse of discretion. [Citation.] To make such a determination we must review the entire record, paying particular attention to the trial court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reaching its decision." ' " (*Ibid.*) But " '[w]here the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the

7.

reviewing court applies a de novo standard of review to the legal determinations made by the trial court.' " (*Id.* at pp. 456–457.)

### C. Section 1021.5 requirements

We will address each section 1021.5 requirement, though the trial court did not address each one. Of the requirements the court did address, the court found FBHC had met some and not others. In our view, the court erred in determining FBHC was not entitled to fees from the City under section 1021.5.

#### 1. Successful party

The order appealed from recognizes FBHC as the successful party, and the City does not dispute that. The "successful party" in a case under section 1021.5 " 'is the party to litigation that achieves its objectives.' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 621 (*Wal-Mart*).) FBHC sought to have Measure P declared passed with a simple majority vote, and FBHC achieved that. There is no question FBHC is the "successful party."

#### 2. Opposing party

The trial court determined the City was not an opposing party to FBHC for section 1021.5 purposes. The court cited *Nestande v. Watson* (2003) 111 Cal.App.4th 232 (*Nestande*), which held that an "opposing party" for section 1021.5 purposes is "a party whose position in the litigation was adverse to that of the prevailing party. Simply put, an 'opposing party' … is a losing party." (*Nestande, supra,* 111 Cal.App.4th at pp. 240–241.) The trial court held the City was "not truly an opposing party to FBHC," despite that the City was responsible for declaring that Measure P had not passed. Instead, the court stated that HJTA was FBHC's "true opponent." To support this conclusion, the court stated that the City took a neutral position "throughout these proceedings before the trial and appellate courts." The court also said it would be "unjust" to make the City pay FBHC's fees because the City would have been potentially liable to HJTA for fees had HJTA failed. In the court's view, the City was unfairly

"caught in the middle," as there was no outcome in which the City would not be liable for someone else's fees.

Here, the material facts relevant to this issue are not in dispute, and the sole question is whether the City is an "opposing party" under section 1021.5. Under these circumstances, we review the legal issue de novo. (*Investco, supra,* 22 Cal.App.5th at pp. 456–457.)

"Opposing party," as used in section 1021.5, means "a party whose position in the litigation was adverse to that of the prevailing party. Simply put, an 'opposing party' … is a losing party." (*Nestande, supra,* 111 Cal.App.4th at p. 240.) And generally, an opposing party is the agency or person sued "responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation." (*Connerly, supra,* 37 Cal.4th at pp. 1176–1177.)

Relying on *Nestande*, the City argues it was not an adverse party to FBHC because the City remained neutral throughout the litigation, never taking a position adverse to FBHC. *Nestande* is distinguishable. There, Nestande petitioned for a writ of mandate challenging the ballot title and summary of an initiative to amend the Orange County General Plan. (*Nestande, supra,* 111 Cal.App.4th at pp. 235–236.) The title and summary had been prepared by the county counsel. (*Id.* at p. 236.) Songstad, a proponent of the initiative, and the county filed answers to Nestande's petition. (*Ibid.*) They defended the ballot title and summary in their answers. (*Ibid.*)

The trial court granted Nestande's petition. (*Nestande, supra,* 111 Cal.App.4th at p. 236.) In response, Songstad petitioned for a writ of mandate in the Court of Appeal. (*Id.* at pp. 236–237.) Songstad's petition challenged the trial court's order granting Nestande's petition. (*Id.* at p. 237.) The county filed a response to Songstad's petition claiming that the ballot title and summary "constituted a true and impartial summary of the initiative." (*Id.* at p. 237.) Songstad prevailed on his petition. (*Ibid.*) As a result, the

ballot title and summary appeared on the ballot "exactly as written by the County." (*Id.*, at p. 238.)

Songstad filed a motion for attorney fees under section 1021.5. (*Nestande, supra,* 111 Cal.App.4th at p. 238.) He sought recovery from both Nestande and the county as "opposing parties." (*Ibid.*) The appellate court concluded that the county was not an opposing party to Songstad and thus not liable for his attorney fees. (*Ibid.*) The court noted that Songstad and the county had "defended the ballot title and summary in the trial court and the appellate court proceedings." (*Id.* at p. 241.) Moreover, the county "never took any legal position in the litigation that was adverse to Songstad and did not oppose Songstad on the merits of any legal issue." (*Ibid.*) The county also was not a losing party. "The final outcome of the two writ petitions was that [the county was] not required to change the ballot title or summary …. This was exactly the outcome [the county]—along with Songstad—sought in the trial court and the Court of Appeal. Thus, [the county was a] prevailing part[y] on the same side of the litigation as Songstad, and [it was] not [an] opposing part[y] to Songstad." (*Ibid.*)

Unlike the county in *Nestande*, the City here was not a "prevailing part[y] on the same side of the litigation as" FBHC. (*Nestande, supra,* 111 Cal.App.4th at p. 241.) The result of the litigation was not "exactly the outcome [the City]—along with [FBHC]— sought in the trial court." (*Ibid.*) Indeed, FBHC sought to overturn the City's action after the City declined to change course, despite FBHC's demands. Thus, the City was responsible for the action that harmed the public interest and gave rise to the litigation. (*Connerly, supra,* 37 Cal.4th at pp. 1176–1177.) The City's purported neutrality during litigation does not neutralize the City's failure to declare Measure P passed, an error of constitutional dimension affecting the public interest.[4] In this same vein, the City was

---

[4] See discussions *post* as to how this case involved an important right affecting the public interest.

clearly a losing party because new judgments were ultimately entered declaring that the City erred in failing to declare that Measure P had passed. *Nestande* is of no assistance to the City for these reasons.

 *Animal Protection and Rescue League v. City of San Diego* (2015) 237 Cal.App.4th 99 ("*Animal Protection*") supports our rejection of the City's argument that it was not an "opposing party" within the meaning of section 1021.5. In *Animal Protection,* the City of San Diego confessed error in its answer to a petition for writ of mandate. (*Id.* at p. 102.) Under section 1021.5, the trial court awarded fees to the petitioners. (*Id.* at p. 104.) The City of San Diego contended that it was not liable for attorney fees because it was not an opposing party, as it had never taken a position adverse to the petition. (*Id.* at p. 107.) The *Animal Protection* court disagreed, holding that the city was an opposing party. (*Ibid.*) The court observed that "the City, via its planning commission, was the entity 'responsible for initiating and maintaining actions or policies … that gave rise to the litigation.' " (*Ibid.*, quoting *Connerly, supra,* 37 Cal.4th at p. 1177.) The court held: "The fact that the City confessed its error and agreed to have a judgment entered against it does not provide a reasonable basis for concluding that the City may not be subject to an attorney fee award under section 1021.5." (*Animal Protection,* at p. 107.)

 *Animal Protection* demonstrates that a public entity that does nothing to remediate the acts giving rise to the litigation may also be an opposing party despite "confess[ing] error in response to litigation." The principle underpinning this holding applies here. While the City here did not oppose FBHC during this litigation, it never remediated the acts giving rise to this litigation. Applying this reasoning, we conclude the City was an opposing party to FBHC, and therefore the trial court's contrary determination was mistaken.

11.

The *Animal Protection* court also distinguished *McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610 (*McGuigan*), a case that the City also relies on. The *Animal Protection* court explained:

> "In *McGuigan*, this court applied *Nestande*, among other decisions, in considering whether a municipality, as one of two settling parties defending a settlement in an appeal pursued by third party objectors, could be assessed appellate attorney fees under section 1021.5 in favor of the other settling party (McGuigan). (*McGuigan, supra,* 183 Cal.App.4th at p. 618[…].) This court concluded that McGuigan could not recover appellate attorney fees against the municipality since, in the appeal, the municipality 'was simply not an "opposing party" to [McGuigan] when these fees were incurred; rather, these parties were allied in interest in defending the settlement....' " (*Animal Protection, supra,* 237 Cal.App.5th at p. 605.)

Unlike in *McGuigan*, this is not a case in which a prevailing party seeks appellate attorney fees from an allied party in an appeal brought by a third party. The City and FBHC were never allied. FBHC sued the City seeking a judgment directing the City to take a different action than the action it took, and, after the City claimed a position of neutrality, FBHC obtained a judgment against the City.

The City also cites *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614 (*Wal-Mart*) to argue that its neutrality during litigation precludes it from being considered an "opposing party." In our view, *Wal-Mart* is also distinguishable. There, the City of San Marcos approved general and specific plan amendments to permit the development of a second Wal-Mart store in the city. (*Id.* at p. 618.) Two residents of the city, Drake and Walton, submitted a referendum petition to the city's clerk with 4,723 signatures challenging the city's action and seeking to put the matter to a vote. (*Ibid.*) The clerk delivered the petition to the county registrar of voters for signature verification. (*Ibid.*)

Wal-Mart filed a petition for peremptory writ of mandate against the city, the city's clerk, and the registrar of voters. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 618.)

12.

Wal-Mart named Drake and Walton as real parties in interest. (*Ibid.*) Wal-Mart also filed a motion for an order directing the issuance of a peremptory writ of mandate. (*Ibid.*) Wal-Mart sought to invalidate the referendum petition on grounds it violated the Elections Code and because, as noted in the city clerk's report, 3,594 signatures were obtained by persons not registered to vote or qualified to register to vote in the city. (*Ibid.*)

The city did not oppose the petition or motion. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 618.) Instead, the city and the city's clerk together filed a "response" in which it sought the court's guidance on the proper verification of petition signatures. (*Ibid.*) The city submitted evidence that the registrar of voters does not follow the Election Code's prescribed procedures for verifying signatures, and instead follows procedures promulgated by an official from the Secretary of State. (*Id.* at pp. 618–619.)

Drake and Walton opposed Wal-Mart's petition and motion. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 619.) They argued, among other things, that the petition was an inappropriate pre-ballot challenge that should be denied as premature. (*Ibid.*) The trial court agreed that the motion was an improper and premature pre-ballot challenge, and the court accordingly denied the motion and dismissed the petition without prejudice. (*Ibid.*)

The referendum went before the city's voters where the city's action was defeated, with about 61 percent of the electorate objecting to the proposed store. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 619.)

Drake and Walton moved for attorney fees from Wal-Mart and the city under section 1021.5. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 619.) The court denied the motion as to both Wal-Mart and the city. (*Ibid.*) The Court of Appeal reversed in part, finding it was an abuse of discretion not to award attorney fees against Wal-Mart. (*Id.* at p. 621.) The appellate court found, however, that the lower court had not abused its discretion in concluding the city was not an "opposing party" under section 1021.5. (*Id.* at p. 624.)

The *Wal-Mart* court rejected Drake and Walton's assertion that the city was an opposing party because it did not oppose Wal-Mart's writ petition. (*Wal-Mart, supra,* 132 Cal.App.4th at p. 624.) To that point, the court held that the city did not need to oppose the petition or adopt Drake and Walton's arguments to avoid the imposition of attorney fees. (*Ibid.*) The court also observed that the city did not oppose Drake and Walton's position, and instead "merely sought a judicial 'determination of the procedure to be followed' in counting signatures on the referendum petition." (*Id.* at p. 625.)

The City here argues that it was like the City of San Marcos in *Wal-Mart* in that it "took a neutral, non-adversarial position in the litigation, rather than in *Animal Protection*, where the government actually stood in opposition to the private party's position and had a judgment rendered against it." But *Wal-Mart* is distinguishable. For one, judgment in *Wal-Mart* was "entered … in favor of the City[,]" whereas judgment here was entered against the City. In other words, the City here was a losing party. Also, the city in *Wal-Mart* was responsible for nothing that gave rise to the litigation. Wal-Mart, as the petitioner, was challenging a referendum petition initiated by the real parties in interest, not by the city. This is to say, the litigation was not over the city's actions. The defeat of Wal-Mart's petition and motion thus did not result in a loss for the city, and the real parties in interest and the city were never adverse to each other during the litigation.

Here, by contrast, the litigation was about the City's action. FBHC successfully challenged this action, resulting in a loss for the City. In sum, the City's nonparticipation during litigation does not change the fact that it was an opposing party to FBHC.

Finally, we address the trial court's determination that an award of attorney fees would be unjust because it would have been potentially liable for HJTA's attorney fees had HJTA prevailed. In our view, the City would not have been liable to HJTA for fees because HJTA was not an opposing party to the City. HJTA was seeking a judgment upholding the City's decision declaring Measure P had failed. So if HJTA had prevailed,

14.

the City would have as well. And since the City would not have been a losing party, it would not have been liable for HJTA's fees. (*Nestande, supra,* 111 Cal.App.4th at pp. 240–241 ["Simply put, an 'opposing party' … is a losing party"].)

### 3. Important right affecting the public interest

While the trial court's order did not address whether this litigation "resulted in the enforcement of an important right affecting the public interest," the City does not dispute that this element is met here. (§ 1021.5.) Section 1021.5 awards can involve somewhat intangible rights, such as clarifying constitutional principles. (*In re Adoption of Joshua S.* (2008) 42 Cal.4th 945, 958 (*Joshua S.*).) This litigation clarified an important aspect of the constitutional right of initiative in this state. There is no question this case involved an important right affecting the public interest. (*City of Fresno, supra,* 59 Cal.App.5th at p. 227 [recognizing the initiative power is "one of the most precious rights of our democratic process"].)

### 4. Significant benefit

The trial court determined the litigation conferred significant benefits on the general public or a large class of persons, and the City does not contest this finding. FBHC in its motion identified two significant benefits that this litigation conferred on a large class of persons: (1) the programs in Fresno to be funded with the tax revenue from Measure P (a citywide benefit), and (2) the clarification of the voter threshold required for a citizen-initiated tax measure (a state-wide benefit). The trial court identified these as the two significant benefits that satisfied this section 1021.5 factor. As the City does not dispute this finding, we will not disturb it.

But we still have something to address. As part of its discussion of the significant benefit factor, the trial court said: "[r]elevant to the question of the significant benefits obtained is the decision in *Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 157–158 ("*SOHO*"), a case neither side discusses." *SOHO* is not relevant to the significant benefits factors. But we will address it because the City

15.

contends it provides an exception to section 1021.5 that applies here. We believe the City is incorrect.

In *SOHO*, the City of San Diego approved a development project. (*SOHO, supra,* 11 Cal.App.5th at p. 158.) SOHO petitioned for a writ of mandate against the city, as respondent, and the project proponent, as real party in interest, challenging the approval. (*Ibid.*) The trial court granted the petition on some grounds and entered a judgment directing the city to rescind the project approval. (*Ibid.*) The city did not appeal, but the project proponent and SOHO each appealed aspects of the judgment. (*Ibid.*) The Court of Appeal reversed the judgment. (*Ibid.*) The project proponent then sought attorney fees from SOHO under section 1021.5, which the trial court declined to award. (*Ibid.*)

The *SOHO* court affirmed the denial of fees. (*SOHO, supra,* 11 Cal.App.5th at p. 162.) It was undisputed that the project proponent satisfied section 1021.5's multi-prong test for an attorney fees award. (*Id.* at p. 160.) But still the court declined to award fees because SOHO was " ' "not the type of party on whom private attorney general fees were intended to be imposed." ' " (*Id.* at pp. 160–161.) The court based this conclusion on an exception to section 1021.5 recognized by the Supreme Court of California in *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1027. (*SOHO,* at p. 161.) Under that exception, "a section 1021.5 fee award may not be imposed on a litigant who did nothing to adversely affect the public interest[.]" (*Serrano,* at p. 1020, citing *Joshua S., supra,* 42 Cal.4th at p. 958.)

The *SOHO* court observed the Supreme Court's decision in *Joshua S.,* which recognized that section 1021.5's language "impliedly required that 'the party on whom attorney fees are imposed be responsible for adversely affecting the public interest.' " (*SOHO, supra,* 11 Cal.App.5th at p. 161, quoting *Joshua S. supra,* 42 Cal.4th at p. 955.) Quoting further from *Joshua S.*, the *SOHO* court recognized that attorney fees under section 1021.5 may be imposed only on those who " 'have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through

16.

litigation.' " (*SOHO,* at p. 161, quoting *Joshua S.* at p. 956.)  The court put the applicable test for that case like this:  "[t]he relevant inquiry in cases where the defendant or the real party in interest prevails in defending against litigation and seeks attorney fees from the party who initiated the litigation is whether the litigation was detrimental to the public interest because it sought to curtail or compromise important public rights." (*SOHO,* at p. 162.)  The court answered this question negatively because "SOHO did not seek to curtail or compromise important public rights or exonerate SOHO's violation of such rights." (*Ibid.*)  In the end the court held the litigation was not "detrimental to the public interest such that imposing a fee award on SOHO would be appropriate." (*Ibid.*)

The City cites *SOHO* to support the trial court's finding that "the City's actions were not detrimental to the public interest such that imposing a fee award against it would be appropriate."  The "actions" to which the City and the court refer are the City's actions as part of the court proceedings:  the filing of its declaratory relief action seeking a determination of an important constitutional question and its position of neutrality throughout the litigation.  The City contends its litigation actions were in service of the public interest.

But the City overlooks the fact that distinguishes this case from *SOHO*, which is that the City is a public entity that was responsible for the action that caused the need for litigation, an action that was ultimately determined to be an error of constitutional dimension.  By contrast, SOHO was a private group that did nothing, before or during litigation, that harmed the public interest.  The only similarity between the City here and SOHO is that they were both losing parties.  The City, unlike SOHO, is " ' "the type of party on whom private attorney general fees were intended to be imposed." ' " (*SOHO, supra,* 11 Cal.App.5th 154, 160–161.)  The exception to liability for fees under section 1021.5 recognized in *SOHO* does not apply to the City here.

## 5. The necessity and financial burden of private enforcement

To award attorney fees under section 1021.5, the court must also determine that the necessity and financial burden of private enforcement of the right at issue make a fee award "appropriate." The trial court found that FBHC's participation in this litigation was unnecessary because the City filed its own complaint for declaratory relief seeking judicial resolution of the voter threshold question. The court did not address the financial burden of FBHC's litigation efforts. We conclude that the trial court's finding that FBHC's participation here was unnecessary was an abuse of discretion. We also conclude as a matter of law that the financial burden of private enforcement makes an award of fees appropriate.

Parties claiming fees under section 1021.5 must show the need for private, as opposed to public, enforcement of important statutory rights. The " 'necessity … of private enforcement' has long been understood to mean simply that public enforcement is not available, or not sufficiently available." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1217 (*Whitley*).) The City maintains that the trial court correctly determined FBHC's participation was unnecessary because the City, by filing its declaratory relief complaint, "took the action required to vindicate and protect Fresno's citizens." This argument implies that FBHC could have chosen not to participate and the ultimate result here would have been the same—that is, Measure P would have been declared passed. The record shows this is false. The City filed statements of neutrality in the trial court and in this court in the first appeal. Thus, without FBHC, there would have been no one to zealously argue the side against HJTA. And even with FBHC's participation, HJTA still prevailed in the trial court. The City would not—and indeed did not—appeal the judgments declaring Measure P had failed. Had FBHC not participated in the trial court proceedings, it would not have had standing to appeal the erroneous judgments—no one could have appealed the erroneous judgments. FBHC also handled all of the appellate briefing for the pro-Measure P side, so to speak.

18.

The City played no part in getting Measure P declared passed. Indeed, the City did not take action toward implementing Measure P until FBHC obtained new judgments requiring the City to do so. FBHC's participation here was indispensable, and the City's argument to the contrary is unsupported by the facts.

As to the financial burden requirement, the trial court did not address it and the City does not argue on appeal that it was not met. Although it is ordinarily a discretionary question for the trial court, the undisputed facts show as a matter of law that the only reasonable conclusion to be drawn is that this factor was met. (See *Tracy Joint Unified School Dist. v. Pombo* (2010) 189 Cal.App.4th 889, 895 [if the uncontradicted facts permit only one reasonable interpretation on a question of fact, the issue is one of law, and the rule of deference on appeal does not apply]; see also *Blaser v. State Teachers' Retirement System* (2022) 86 Cal.App.5th 507, 523 [though existence of an estoppel is question of fact reviewed for abuse of discretion, de novo review applies when undisputed facts leave but one reasonable conclusion to be drawn].)

An award on the "private attorney general" theory is appropriate when the cost of the claimant's legal victory transcends his personal interest; that is, when the need to pursue the lawsuit placed a burden on the plaintiff " ' "out of proportion to his individual stake in the matter." ' " (*Woodland Hills Residents Assn. Inc. v. City Council (Woodland Hills II)* (1979) 23 Cal.3d 917, 941.) FBHC correctly identifies the test. In assessing the financial burden of private enforcement, courts ask "whether the financial burden of the plaintiff's legal victory outweighs the plaintiff's personal financial interest." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 154.) "An attorney fee award under section 1021.5 is proper unless the plaintiff's reasonably expected financial benefits exceed by a substantial margin the plaintiff's actual litigation costs." (*Ibid.*) As especially relevant here, "[a] litigant's personal nonpecuniary motives may not be used to disqualify that litigant from obtaining fees under … section 1021.5." (*Whitley, supra,* 50 Cal.4th at p. 1211.)

Here, FBHC's motives were entirely nonpecuniary; it did not seek any financial recovery.  FBHC's President and CEO submitted a declaration in support of FBHC's motion for attorney fees stating that FBHC had paid their attorneys over $250,000.  Three attorneys who worked on this case for FBHC also submitted declarations, with invoices attached, corroborating the President and CEO's declaration.[5]  Thus, there is no question that costs of this litigation constitute a financial burden that makes a fee award appropriate here.  The financial burden factor therefore must be decided in FBHC's favor as a matter of law.

### 6. Whether fees should be paid out of the recovery

Finally, the trial court determined that section 1021.5's last factor (hereafter "factor (c)") was not met.  Factor (c) requires the court to consider if attorney fees "should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)  The court acknowledged there was no monetary recovery here.  Yet the court, relying on *Rider v. County of San Diego* (1992) 11 Cal.App.4th 1410 (*Rider*), concluded factor (c) was not met because "both sides acted in good faith to uphold the public interest, and the decision reached by the court of appeal in this case was not a clear, obvious or foregone conclusion prior to the rendering of the opinion[.]"

FBHC contends the trial court erred in failing to recognize that factor (c) of section 1021.5 did not even apply as there was no financial recovery.  FBHC also argues the court impermissibly considered the City's good faith and the uncertain state of the law at the time in determining whether FBHC was entitled to fees at all.  We find that FBHC is correct.

First, factor (c) of section 1021.5 that requires the court to determine whether fees "should not in the interest of justice be paid out of the recovery, if any," applies only in

---

[5] This is not to say that the amount of fees charged to FBHC were reasonable.  We express no opinion in that regard.  That will be for the trial court to decide on remand in the first instance.

cases in which there has been a financial "recovery." (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1355.)  Thus, this factor was inapplicable here and the court erred in considering it.

*Rider* illustrates a situation where factor (c) of section 1021.5 applies.  There, a taxpayer group sued successfully to invalidate a sales tax that had been approved by a bare majority of the electorate rather than by the two-thirds majority required under Proposition 13.  (*Rider, supra,* 11 Cal.App.4th at p. 1414.)  The invalidated taxes had been sequestered and not spent.  (*Id.* at pp. 1416, 1423.)  The section 1021.5 issue in *Rider* concerned whether the taxpayer group's attorney fees should be paid from the fund of the invalidly collected tax revenues under a common fund theory, or from the general fund of the sued governmental entity under the private attorney general theory of section 1021.5.[6]  (*Id.* at pp. 1422–1423.)  *Rider* specifically involved the qualification set forth in factor (c) of section 1021.5—whether the attorney fees "*should not* in the interest of justice be paid out of the recovery, if any."  (*Id.* at p. 1422, italics added.)

The *Rider* court concluded factor (c) of section 1021.5 was not met because, in the " 'interest of justice,' " the attorney fees *should* be paid out of the recovery; that is, from the sequestered common fund of the illegally collected taxes, rather than from the general fund of the sued government entity under section 1021.5.  (*Rider, supra,* 11 Cal.App.4th at p. 1422.)  The *Rider* court concluded that factor (c) of section 1021.5 had not been met because both sides of the litigation acted in good faith to uphold the public's interest, and the sales tax's invalidity was not obvious.  (*Rider*, at p. 1422.)  Because the illegal taxes had been preserved and not spent, the court found that compensating the taxpayer group's attorneys out of that preserved fund was a "precise 'fit' within the 'common fund theory.' "  (*Id.* at p. 1423.)

---

[6] The common fund theory arises when a litigant's efforts create or preserve a fund from which others derive benefits, and the litigant may recover its costs, including attorney fees, from the fund.  (See *Rider, supra,* 11 Cal.App.4th at pp. 1422–1423.)

We have already explained how factor (c) of section 1021.5 is not invoked here because FBHC sought only declaratory relief and related writ relief; FBHC never sought or received any financial recovery. (*Woodland Hills II, supra,* 23 Cal.3d at p. 935 ["[i]nasmuch as plaintiffs' action has produced no monetary recovery, factor '(c)' of section 1021.5 is not applicable"].) Thus, *Rider* is inapplicable here.

FBHC also correctly argues that neither the City's good faith nor the uncertain state of the law throughout the proceedings—the two "interest of justice" factors which the court took from *Rider*—constitute "special circumstances" that the court could rely on to determine that an award of fees would be unjust. In *Schmid v. Lovette* (1984) 154 Cal.App.3d 466, 473—475, the court "rejected the appellants' argument that they believed in good faith that they were following the law, and held that there was 'no "good faith exception" ' to liability for attorney fees under section 1021.5." (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 161.) Also, we find no case holding that the difficulty of the legal issue in a case constitutes a special circumstance for section 1021.5 purposes, and we would not expect to find one; it would be strange to hold that attorney fees should not be awarded to a prevailing party because the case was legally challenging.

In sum, factor (c) of section 1021.5 simply did not apply here, and the trial court inappropriately considered "interest of justice" factors in connection with its factor (c) analysis.

## CONCLUSION

Despite the City's arguments to the contrary, it is clear that without the active participation of FBHC in this case, the City's failure to declare Measure P passed would never have been litigated and determined to be incorrect. This is precisely the situation Code of Civil Procedure section 1021.5 was intended to address, and to not award reasonable attorney fees in this case would be contrary to its mandate.

**DISPOSITION**

This case is reversed and remanded to the trial court for a determination of the amount of reasonable attorney fees payable by the City of Fresno to counsel for FBHC, and for any other orders consistent with this opinion. FBHC's request for judicial notice is denied as not necessary to deciding the appeal.  FBHC is awarded its costs on appeal.


                                                                    SNAUFFER, J.
WE CONCUR:


PEÑA, Acting P. J.


MEEHAN, J.

23.